**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mack Elmond COTTON,
Defendant–Appellant.**

No. 79–5392.

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1980.

Rehearing Denied Dec. 22, 1980.

Melvyn Carson Bruder, Dallas, Tex., for defendant–appellant.

Shirley Baccus–Lobel, Asst. U. S. Atty., Dallas, Tex., for plaintiff–appellee.

Before CHARLES CLARK, TJOFLAT and GARZA, Circuit Judges.

GARZA, Circuit Judge:

On December 24, 1976, the appellant Mack Elmond Cotton attempted to pass a counterfeit $50 bill at a liquor store in Dallas, Texas. He was interviewed at the time by a secret service agent, who concluded that Cotton had been an innocent purchaser and allowed him to go. A short time later, after review of that agent's report, another secret service agent began an investigation of the matter. In early 1977, the Secret Service recruited James P. Vouras to assist as a paid informant in the investigation of Cotton. Vouras was a convicted felon and acquaintance of Cotton.

Vouras contacted Cotton to discuss "hot diamonds." Without any additional prompting, Cotton told Vouras that he knew of a very good printer. The two met again a few days later at which time Cotton displayed some currency bills to Vouras. Vouras acted interested in the money, and the two discussed a sale of counterfeit bills ranging from $100,000 to half a million dollars at thirty percent. At that time, Cotton gave Vouras one counterfeit $50 note and three counterfeit $20 notes. Following two additional meetings, Vouras met with Cotton and co–conspirators Joyce Read and Gene Etley. Vouras gave Cotton $900 supplied by the government, and he then obtained one hundred forty–nine counterfeit $20 bills from the glove compartment of Cotton's truck.

Shortly thereafter, Read, Etley, Cotton and his wife were arrested on the highway between Austin and Dallas. Counterfeit currency totaling $150,000 was found in a box in the car. Etley was found in possession of two of the $100 bills which Cotton had received earlier from Vouras.

On March 1, 1977, Cotton was indicted in the Western District of Texas for conspir-

acy to violate the federal counterfeiting laws and for possession of counterfeit money, in violation of 18 U.S.C. §§ 2, 471, 472 and 473. This indictment concerned an alleged conspiracy beginning in July of 1976, and continuing until Cotton's arrest in February of 1977. The trial resulted in a mistrial due to a hung jury. On March 15, 1977, Cotton was indicted in the Northern District of Texas for attempting to pass a counterfeit bill at the liquor store in Dallas. Cotton was acquitted of that charge.

On December 12, 1978, Cotton was indicted in the Northern District of Texas for possession of and attempting to pass counterfeit bills in violation of 18 U.S.C. §§ 472 and 473. This indictment specifically concerned the actions that occurred between Cotton and Vouras on February 11, 1977. On February 9, 1979, Cotton was charged in a superseding indictment in the Northern District of Texas with conspiracy to defraud, possess and conceal counterfeit money and to buy, sell, and exchange, transfer, receive and deliver such counterfeit money, in violation of 18 U.S.C. §§ 472 and 473, and with intentional possession and concealment of counterfeit money and the sale, transfer and delivery of such notes. Count one of the indictment concerns the same alleged continuing conspiracy charged in the first indictment in 1977. Counts two, three and four concern the transactions between Cotton and Vouras. Cotton was convicted on Counts one, three and four.

Cotton now raises four issues on appeal. Cotton contends that he was denied his right of confrontation, that a government witness should have been disqualified since he allegedly was granted immunity from prosecution for perjury, that the prosecution committed error in final argument and that the trial which resulted in his conviction violated his rights against double jeopardy.

■ Cotton's first challenge concerns testimony by a secret service agent regarding statements made by Joyce Read after defense counsel informed the court that Read would invoke her Fifth Amendment privilege. The government, however, contends that during an interview between Read and a secret service agent, she had not indicated a desire to invoke her Fifth Amendment rights. On cross examination of the secret service agent, defense counsel asked the agent whether he knew Read, whether he had spoken with her and whether he had asked about her willingness to testify. Defense counsel also inquired of the agent whether he had made any statements to Read. On re-direct, the government asked the agent whether Read had ever said anything to the agent regarding her willingness to testify. Defense counsel objected to that question on the grounds that his client would be denied his right of confrontation. The trial court overruled the objection, stating that defense counsel had opened the door to that line of testimony. The agent then related that Read had told him that she feared for her life and the life of her twelve year old daughter because of possible retribution by Cotton and Etley or their friends.

This court finds no error in trial court's overruling of defense counsel's objection. Once defense counsel inquired into the area of Read's willingness to testify, probably in hopes of persuading the jury that the agent exerted undue influence upon Read, the government had the right on rebuttal to clarify that issue, by attempting to remove any stigma created by defense counsel's questioning. *See United States v. Delk*, 586 F.2d 513, 516 (5th Cir. 1978).

■ Cotton's second challenge concerning the granting of immunity from perjury charges to Etley, a government witness, is wholly without merit. Nowhere in the record is there any evidence that Etley was granted immunity from perjury for his testimony at the instant trial either by the government or by the judge. Apparently, Etley had been granted immunity before a Waco grand jury, but that grant had nothing to do with his testimony in the present trial.

■ Cotton also contends that the prosecutor committed reversible error during final argument. The prosecutor in his clos-

ing argument defended the secret service agents who testified by stating that they were men who protected the President of the United States and that they were not the type of men to take the stand and risk their careers by lying merely for the sake of convicting Cotton. The prosecutor also stated that such tactics would probably involve him, as well, by his suborning of the agents' perjury.

Cotton contends that such remarks went beyond the bounds of prosecutorial comment. We cannot agree that such comments were prejudicial error in light of the surrounding circumstances. In this case, defense counsel in his final argument had attempted to portray the secret service agents as liars due to their desire to convict Cotton. Defense counsel also referred to cover up attempts by the government. In light of this preceding argument, the government was completely within its right to try to rebut defense counsel's argument in the way it did. *See United States v. Downs*, 615 F.2d 677, 678 (5th Cir. 1980); *United States v. Handly*, 591 F.2d 1125, 1132 (5th Cir. 1979). Even if it could be considered as error, which this court does not, it would be harmless because, based upon the entire record, there is no evidence of substantial prejudice to Cotton, and the evidence of his guilt is extremely strong. *See United States v. Miranda*, 593 F.2d 590, 596 (5th Cir. 1979); *United States v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978). *See also Cobb v. Wainwright*, 609 F.2d 754, 755 (5th Cir. 1980) (court must consider possible prosecutorial misconduct in context of trial as a whole).

In Cotton's final attack on his conviction, he contends that the jury in his prior trial for the attempted passing of a counterfeit note at the Dallas liquor store considered evidence which was used in the instant case. Cotton argues that such consideration by the jury bars prosecution of this case under the principle of collateral estoppel. The facts supporting the indictment in that earlier case in which Cotton was acquitted were not the bases for the indictment in the present case. Further, in the earlier case, the trial judge had informed the jury that they were not to consider evidence of any other crime besides the attempted passing of the counterfeit note at a liquor store unless they believed that the defendant had committed such other crime, and then only to show the defendant's intent in attempting to pass the counterfeit bill. Thus, the jury in that case was permitted but not required to consider evidence of other crimes, and it was not a necessary part of the jury's determination in deciding whether Cotton knowingly attempted to pass the counterfeit notes at the liquor store in Dallas.

■■ The doctrine of collateral estoppel may be raised when an issue of ultimate fact has been determined by a valid and final judgment, precluding the re–litigation of that issue between the same parties in any future lawsuit. *United States v. Lee*, 622 F.2d 787, 789 (5th Cir. 1980). Thus, collateral estoppel will preclude a subsequent prosecution only if the jury could not rationally have based its verdict on an issue other than the one the appellant seeks to foreclose. *Id.* at 790. If a fact is not necessarily decided in a prior trial, the possibility that it might have been does not prevent re–examination of that issue in a subsequent trial. *Id.; United States v. Ballard*, 586 F.2d 1060, 1064 (5th Cir. 1978). Thus, the fact that the jury in that earlier case had been permitted to consider the evidence of other crimes was not necessarily the dispositive nor necessary element of the jury's decision, and Cotton is unable to invoke the doctrine of collateral estoppel in this case.

Based upon a thorough examination of the entire record, this court finds no errors in the proceedings below.

AFFIRMED.