**UNITED STATES of America, Appellee,**

v.

**Allen Ray JOHNSON, Appellant.**

**No. 80–5174.**

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1981.

Decided Aug. 18, 1981.

Thomas F. Loflin, III, Durham, N. C. (Loflin & Loflin, Durham, N. C., on brief), for appellant.

William Woodward Webb, Raleigh, N. C. (James L. Blackburn, U. S. Atty., Raleigh, N. C., Richard T. Gammon, Laura L. Kranifeld, Third Year Law Students, on brief), for appellee.

Before BUTZNER* and HALL, Circuit Judges, and MICHAEL**, District Judge.

MICHAEL, District Judge.

While there are eight assignments of error set out in appellant's brief, this case essentially presents for decision three issues. The first of these is the denial of a motion for mistrial by defendant based on the court's "interjections, interruptions, and conduct toward the defendant and his attorneys". The second is an assignment of error contending that the trial court erred in the manner in which it interrogated the jurors and ultimately discharged one of the jurors, replacing that discharged juror with an alternate juror. The third asserted error relates to the charge of the court concerning the matter of the specific intent necessary for a conviction under 18 U.S.C. § 1503.

I.

As to the first issue, a detailed and careful analysis of the transcript reveals that the trial court undertook, on numerous occasions, to expedite the proceedings in this case. There are several instances of adjurations by the trial court to counsel, urging them to move the case along. These comments were applied with a catholic hand, being directed both at counsel for the defendant and at counsel for the government. As examples, objections were made on the part of the government to "leading of this witness". The court sustained the objection and asked counsel to go forward promptly with the case. *See* Appendix 22a. On other occasions, after the court made a ruling, the defendant's counsel undertook to argue further and was told that he could not argue following the making of the ruling. *See* Appendix 15a and 16a. Again, the court indicated that defense counsel had made three efforts to get the witness to testify in a particular fashion, and that the court felt that three times was enough, but it permitted the witness to make his answer for the fourth time. The answer was less than productive, consisting of "I don't remember". *See* Appendix 10a and 11a. Many of the comments as to which complaint is made were had at bench conferences, rather than in the hearing of the jury. *See* Appendix 46a.

Without going more deeply into the analysis of the evidence in the transcript, it is sufficient to say that the court was confronted with vigorously contending lawyers whose expedition in moving the case forward appears strongly to leave much to be desired. The court did on occasion chide the lawyers for their failures to move the case forward, and did on occasion refuse to permit counsel to go into various matters involving a previous trial, 605 F.2d 729, 4 Cir., which had been affirmed by the Court of Appeals.

---

* With the consent of the parties, Judge Butzner participated in this case on the briefs and the tape of the oral argument.

** Honorable James H. Michael, Jr., District Judge for the Western District of Virginia, sitting by designation.

Certainly, a fair analysis of the transcript indicates clearly that the efforts of the judge were in the interest of expediting the case, and were within the legitimate bounds of comment by the trial court in the course of the proceedings. As stated in *United States v. Cole*, 491 F.2d 1276 (4th Cir. 1974) "[T]he judge has the right, and often an obligation, to interrupt the presentations of counsel in order to clarify misunderstandings or otherwise insure that the trial proceeds efficiently and fairly." Here, the court's comments related almost entirely to efforts to avoid repetitions and to move the case along, i.e., efficiently. The comments complained of here are far fewer in number than those complained of in *United States v. Ballard*, 449 F.2d 782 (4th Cir. 1971), where the court held that the entire record disclosed that the 50-odd instances complained of were "well within the ambit of judicial propriety." *See, United States v. Ballard, supra*, at 783.

A careful review of the transcript shows that the comments of the court were well within the appropriate bounds of judicial propriety.

## II.

 Turning to the question of the court's action in removing Juror Bullock and substituting for that juror one of the alternates, the appendix indicates clearly that the trial court undertook to interview separately each juror, to determine the accuracy of a statement which had come to the attention of the court. That statement alleged a comment or comments on the part of one of the jurors which reflected unfavorably on the government's case, the alleged comment having been made in the course of the trial itself. While it is true that the defendant and his counsel were excluded from the interrogation of the jurors, it is equally true that the government and the United States Attorney were likewise excluded from that interrogation of the jurors. While it may well be the better practice for the court, under these circumstances, to have counsel for the parties present in chambers during the interrogation, the court having previously elicited from counsel any questions they might wish to be put to the jurors, the decision in this case to go forward without having counsel present falls within appropriate steps to insure a fair and impartial jury to decide the case. *See, United States v. Cameron*, 464 F.2d 333, 335–6 (3rd Cir. 1972). The trial court must be afforded wide discretion in handling matters relating to the probity and the integrity of the jury. The court in this case acted promptly and commendably in responding to the allegation that one juror had made disparaging remarks concerning the government's evidence, and concerning the Federal Bureau of Investigation, concluding with a statement to the effect that "the FBI ought to be on trial". Certainly the transcript of the interrogation of the jurors reveals nothing which would substantiate these allegations as to any of the jurors save Juror Bullock, and in his case it must be concluded that the evidence was far from certain. Apparently, only one juror heard the comments attributed to Juror Bullock, though they were asserted to have been said under circumstances where other jurors would reasonably be expected to have heard those comments. The other jurors, however, indicated they had heard no comments of the sort alleged. Nevertheless, the trial court apparently concluded that the one flat assertion of the making of the comment justified removing Juror Bullock, a process much facilitated by the availability of an alternate juror.

While the appendix does not disclose it, the transcript clearly shows that the defendant had lived for a number of years in Dunn, North Carolina, a small town in the general area where the events complained of took place, and that his family was living still in Dunn at the time of this trial. As indicated below, the juror complained of was also from Dunn.

Further, as to appellant's argument that the identity of the juror making these comments was unclear, it is certain that Juror Johnson stated that the juror making the alleged comment was "the man from Dunn —Mr. Bullock?". *See* Appendix 71a. At

oral argument, counsel for appellant conceded that there was only one male juror from Dunn. The record adequately indicates that the name of the "man from Dunn" was, in fact, Bullock. There were two jurors named Bullock. One, however, was female and not from Dunn. The other was male and from Dunn. The record fully disposes of this contention by the appellant.

The trial court's action in response to this situation was to excuse Juror Bullock, and to replace him with an alternate.

This court recognizes generally the rationale of cases indicating that the defendant is entitled to be tried by the jury selected by counsel for that trial. *See United States v. Rodriguez*, 564 F.2d 1189 (5th Cir. 1977).

The circumstances involved in the *Rodriguez* case are, however, far different than those in the instant case. In *Rodriguez*, the court apparently was advised by the clerk that a juror had called following a weekend recess to state to the clerk that he had chosen to go to work that day rather than to come to court. Without more, the trial court replaced the absent juror with an alternate, making no inquiry into the matter, undertaking no bench warrant for the juror, and, in fact, simply replacing the absent juror with an alternate. That, of course, is far different from the instant case, where the court carefully interrogated each of the jurors before undertaking the action of replacing one juror with an alternate.

Similarly, as to the other principal case cited by the appellant, namely, *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), there was a totally different factual situation. In *Remmer*, the jury had returned its verdict and apparently had been discharged, before the court learned that during the trial an unknown person had communicated with a juror, who later became foreman of the jury, to the effect that a verdict for the defendant might be profitable. The juror reported the incident to the judge after the verdict had been returned, who in turn informed only the prosecuting attorneys in the case, and, as a result of that conference, elicited help from the FBI to check out the matter. Such a factual pattern scarcely gives standing to *Remmer* as authority for this case.

In this case, alternate jurors were selected right along with the twelve regular jurors. Alternate jurors "shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, power, facilities and privileges as the regular jurors". Fed.R.Crim.P. 24(c). In fact, distinctions between regular and alternate jurors are non-existent in the process of selection and in their treatment throughout the course of the trial, with the unused alternate jurors only being excused after the jury has retired to consider its verdict. Fed.R.Crim.P. 24(c).

While the record before us does not disclose the fact, we must assume that the trial court followed the procedure mandated by the Rules as to preemptory strikes for alternate jurors. Fed.R.Crim.P. 24(c).

While jurors certainly cannot be treated as "fungible goods," *see Rodriguez*, at 1191, it is equally certain that the jurors, regular and alternate, are selected and treated exactly alike, with every safeguard afforded the defendant as to the regular jurors being equally and as rigorously afforded the defendant as to the alternate jurors. There may be a "common and perhaps sound belief" that the original twelve jurors represent a careful selection by counsel, *see Rodriguez*, at 1191, but nothing in the record before us shows any the less careful selection of the alternate jurors. Perhaps there are "not as good fish in the sea as were ever pulled out of it," *see Rodriguez*, at 1191, but here the regular and alternate jurors were drawn in the same net, and, being once drawn, were afforded the precise same treatment. In this case, the facts are so far removed from the fact patterns in *Remmer* and *Rodriguez* that lessons shown from these cases cannot be applied in some mechanistic fashion to this case.

The alleged comments made by one juror came to the court's attention before the

conclusion of the case, and it then dealt with the matter in the fashion outlined above. Certainly, this is far different than the fact pattern in *Remmer*, and it certainly comports in no way with the fact pattern in *Rodriguez*.

We find no abuse of discretion on the part of the trial court in its handling of this always difficult and perplexing problem.

### III.

■ As to the third assignment of error, the defendant asserts that the trial court failed properly to instruct the jury on the element of specific intent, further asserting that the court should have granted defendant's motion for a directed verdict before submitting the case to the jury, that motion being based in part on the same arguments concerning specific intent.

A detailed review of the charge to the jury shows clearly that the court correctly instructed the jury in this case, particularly as to the matter of specific intent, saying "[S]pecific intent to do the act must be proved beyond a reasonable doubt before there can be a conviction. A willfulness must be evidenced, and the act is done willfully if done voluntarily and intentionally with the specific intent to do something the law forbids—that is to say, with bad purpose, either to disobey or disregard the law." Previously, the court had indicated that "[I]n order for you (the jury) to convict this man, (the government) must prove that if he said what the government said he said, that he did it corruptly, or by threats of force with an endeavor to influence, intimidate, or impede someone who is a witness in some court of law. The government must prove every element of this offense beyond a reasonable doubt...." Further, the court properly instructed the jury on the definition of the word "corruptly".

Based on the reading of the charge as a whole, we find that the trial court properly instructed the jury on the issue of specific intent.

For reasons set out above, the judgment of the trial court is

AFFIRMED.