**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Hubert Jerome YONN, Gary Carl Weeks,
Hugo Sanes-Saavedra,
Defendants-Appellants.**

No. 82–5270.

United States Court of Appeals,
Eleventh Circuit.

April 22, 1983.

---

Hatchett, Circuit Judge, dissented and filed opinion.

Philip G. Butler, Jr., West Palm Beach, Fla., for Yonn.

Philip J. Padovano, Tallahassee, Fla., for Weeks.

James I. Marcus, Williams & Marcus, Ltd., Chicago, Ill., for Sanes-Saavedra.

Michael T. Simpson, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before HENDERSON and HATCHETT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

Hubert Yonn, Gary Weeks and Hugo Sanes-Saavedra appeal their convictions for violations of 21 U.S.C. §§ 841, 846, 952 and 963. The pertinent events leading to the charges began in June of 1981, when Yonn first met with James Dozier, a government informant. Yonn offered to pay Dozier, a licensed pilot, $75,000.00 to fly a planeload of marijuana from Colombia to Florida. Yonn anticipated a load of several thousand pounds.

That same day, Yonn introduced Dozier to Weeks. During the following weeks, the

three men met on several occasions to inspect aircraft, select a landing site in Florida, and discuss other logistics of the planned trip. Law enforcement officials eventually provided Dozier with a portable tape recorder for the purpose of recording various telephone conversations with Weeks and Yonn. Later on, a young Colombia national, Hugo Sanes-Saavedra, attended several meetings with these principal actors.

Yonn, Weeks, and Sanes-Saavedra (along with a fourth man who was dismissed as a defendant when the district court granted his motion for judgment of acquittal) were arrested before the planned smuggling operation ever took place. They were charged in a two count indictment for a conspiracy to possess marijuana with the intent to distribute, 21 U.S.C. §§ 841 and 846, and a conspiracy to import marijuana, 21 U.S.C. §§ 952 and 963. A jury found Yonn and Weeks guilty on both counts. Sanes-Saavedra was acquitted of the possession with intent to distribute conspiracy, but convicted on the importation conspiracy charge. On appeal, we consider the various assignments of error asserted by the defendants.

## I.

First, all three of the appellants contend that the district court committed reversible error by the manner in which it investigated an allegation of juror misconduct. The problem arose on the third day of the trial. During a recess, one of the jurors informed a marshal that another juror had improperly expressed her opinion on the weight of the evidence. As the reporting juror recognized, the comment violated the court's earlier instruction admonishing the jury not to engage in pre-deliberation discussions concerning the case and not to form an opinion until it was submitted to them for decision.

Advised of the incident, the trial judge alerted all counsel of his intention to interrogate the jurors individually. Over the defendants' objections, the court proceeded to question each juror outside of the presence of counsel for both sides. He first talked with the juror who had originally

reported the remarks. The inquiry revealed that one of the jurors had stated that the government's chief witness, Dozier, was a "pimp," that she did not believe him, and that she "had already formed an opinion" as to the defendants' innocence. Four other jurors acknowledged hearing the remark, but all of them assured the judge that the comment would not affect their impartiality. Pursuant to the judge's direction, the court reporter transcribed all interviews.

After completing his investigation, the judge informed all counsel of his findings. Without disclosing the identity of the jurors involved or the substance of the improper remarks, the court stated that one juror had indeed violated his admonition against pre-deliberation discussions and forming a premature opinion. The judge further announced that the remaining jurors, including the juror who initially reported the comment, were still capable of rendering an impartial verdict. He also expressed his willingness to excuse the juror guilty of the impropriety.

The government moved the court to excuse that juror. The judge granted the motion, over the defendants' objections, and replaced the dismissed juror with the only alternate previously selected by the parties. Then the defendants requested the removal of the juror who reported the incident to the court. In so moving, they offered to stipulate to an eleven-person jury. The judge again assured them of the reporting juror's impartiality, but agreed to excuse her, provided the defendants knowingly and voluntarily waive their right to a twelve-person jury. After discussions with their attorneys, the defendants individually verified that they waived their right and preferred to continue the trial with eleven jurors. The court then granted their motion to excuse the reporting juror and resumed the trial.

Any challenge to the district court's investigation must be viewed in the context of the broad discretion afforded a trial judge confronted with such an allegation of juror misconduct. *See United States v. Ed-*

wards, 696 F.2d 1277 (11th Cir.1983); *Grooms v. Wainwright,* 610 F.2d 344, 347 (5th Cir.), *cert. denied,* 445 U.S. 953, 100 S.Ct. 1605, 63 L.Ed.2d 789 (1980); *c.f. United States v. Phillips,* 664 F.2d 971, 999 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982) (more stringent duty of inquiry is imposed on trial court when there is an allegation of exposure to *outside* influence). In fact, that discretion extends even to the initial decision of whether to interrogate the jurors.[1] *Grooms,* 610 F.2d at 347. Despite the wide latitude afforded the trial judge, the defendants claim that the district court abused its discretion by questioning the jurors outside the presence of counsel, by dismissing the juror who made the remark, and by obtaining their waiver of a twelve-person jury without disclosing the details of the impropriety.

From our hindsight view, we recognize that it would have been the better practice for the district court to have interviewed the jurors in the presence of all the concerned parties. *See United States v. Parker,* 549 F.2d 998, 1000 (5th Cir.1977); *United States v. Johnson,* 657 F.2d 604, 606 (4th Cir.1981). Fed.R.Crim.P. 43 guarantees a defendant the right to be present at "every stage of the trial." Thus, excluding the defendants or their attorneys from the interrogation of the jurors arguably deprived them of that right. *C.f. United States v. Gay,* 522 F.2d 429, 435 (6th Cir. 1975) (hearing juror requests for excusal outside of the presence of the defendant violated rule). Nevertheless, such an exclusion, even if error, may be harmless. *Rogers v. United States,* 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1, 6 (1975); *see also United States v. Dumas,* 658 F.2d 411, 413–14 (5th Cir.1981), *cert. denied,* 455 U.S.

990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982); *United States v. Dominguez,* 615 F.2d 1093, 1096 n. 4 (5th Cir.1980). After carefully reviewing the transcript of the trial court's questions to the jurors, and their answers thereto, we are convinced that any error, if any, committed by the district court was indeed harmless.

Transcribing the *in camera* interviews for the record helps to minimize the possibility of prejudice, by enabling the reviewing court to examine carefully whether any harm resulted from the *ex parte* contact between the judge and jurors. *See Dumas,* 658 F.2d at 414; *see also Dominguez,* 615 F.2d at 1096 n. 5; *c.f. Gay,* 522 F.2d at 435 (absence of record requires appellate court to "assume prejudice"). In this instance, the record reveals the commendable caution exercised by the trial judge in questioning each juror. He began by assuring the jurors that the inquiry was merely a necessary precaution and did not result from any impropriety on their part. The judge scrupulously refrained from intimating any opinion on the comment; he merely observed that the remark was a possible violation of his instructions. He obtained the pledges of those jurors who had overheard the remarks that the comment had not interfered with their ability to render a fair and impartial verdict, based upon all of the evidence presented, arguments of counsel, and the court's instructions. There is no suggestion that the judge's communications with, or his questions to the jurors intimidated them or prejudiced the defendants. Moreover, when the trial resumed, the court instructed the jury to disregard their earlier conversation, and again reminded them of their duty to base the verdict only on the evidence, the arguments, and the court's instructions. In

---

1. Still, the district court's judgment call in this instance reflected a commendable concern for insuring a fair trial. The sixth amendment guarantees every defendant in a criminal prosecution the right to trial by "an impartial jury." Any discussion among jurors of a case prior to formal deliberations certainly endangers that jury's impartiality. *See Edwards,* 696 F.2d 1277; *Winebrenner v. United States,* 147 F.2d 322 (8th Cir.), *cert. denied,* 325 U.S. 863, 65

S.Ct. 1197, 89 L.Ed. 1983 (1945). As the district court recognized, such conversations may lead jurors to form an opinion as to the defendant's guilt or innocence before they have heard all of the evidence, the arguments of counsel, and the court's instructions. *Winebrenner,* 147 F.2d at 328; *see also United States v. Chiantese,* 582 F.2d 974, 979 (5th Cir.1978), *cert. denied,* 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979).

short, the record refutes any claim that the *in camera* interviews prejudiced the defendants. Without such a showing, their exclusion from the investigation does not rise to the level of reversible error. *See Dominguez,* 615 F.2d at 1096; *Parker,* 549 F.2d at 1000.

■ The complaint that the district court erred by dismissing the juror who made the comments is likewise without merit. Fed. R.Crim.P. 24(c) permits the district court to replace a juror with an alternate whenever he finds the juror is "unable or disqualified to perform his duties." Also, "[t]he decision to excuse a juror for cause upon a suggestion of partiality is within the sound discretion of the trial judge." *United States v. Taylor,* 554 F.2d 200, 202 (5th Cir.1977); *see also United States v. Spiegel,* 604 F.2d 961, 967 (5th Cir.1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). The exercise of that discretion will be upheld if there exists a "sound basis" for the decision. *See, e.g., United States v. Rodriguez,* 573 F.2d 330, 332 (5th Cir.1978). In this case, the nature of the juror's comments, which indicated a strong preconceived opinion of the weight of the evidence, furnished ample cause for dismissal. *See Johnson,* 657 F.2d at 606. Consequently, the replacement of that juror with an alternate did not constitute an abuse of discretion.

■ The defendants' final challenge to the continuation of the trial with eleven jurors deserves little more than passing comment. Although they first proposed to remove the juror who reported the incident, they now claim that their apparent waiver of the right to a twelve-person jury was invalid.[2] We note initially that, having found that the reporting juror's impartiality was unimpaired, the trial judge would have been justified in denying the defendants' request to remove her. Nevertheless, in what he termed an abundance of caution, the judge acquiesced in the defendants' request to excuse that juror and proceed with eleven persons. As this court observed in a similar situation, "[c]ounsel here made a tactical decision and urged it on the trial judge over the prosecution's protest; that conduct served to waive any objection the appellants might have had to proceeding with eleven jurors."[3] *Spiegel,* 604 F.2d at 966.

## II.

■ Yonn claims that the district court erred in admitting the recording of one conversation he had with Dozier in a motel room. Unlike the other tapes introduced into evidence, this one was not recorded by equipment controlled and operated by Dozier. Rather, an electronic monitoring device placed in a motel room, registered to Yonn, intercepted the conversation. Earlier, Yonn had asked Dozier to reserve a room for him at the motel. Dozier informed law enforcement officials of the request. With Dozier's knowledge and consent,[4] the offi-

2. The defendants essentially claim that the district court's failure to disclose the identities of the two jurors involved precluded them from knowingly and intelligently waiving the right. We note, however, that stipulations have generally been upheld when executed before the need to dismiss a juror arose. *See, e.g., United States v. Smith,* 523 F.2d 788, 792 (5th Cir. 1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1475, 47 L.Ed.2d 742 (1976); *see also United States v. Stolarz,* 550 F.2d 488, 493 (9th Cir.), *cert. denied,* 434 U.S. 851, 98 S.Ct. 162, 54 L.Ed.2d 119 (1977). In that context, a waiver has been deemed valid even though the identity of the juror to be dismissed was unknown at the time the defendants entered the stipulation. *See Stolarz,* 550 F.2d at 493.

3. We also reject Sanes-Saavedra's related contention that he did not understand the nature of

the stipulation to which he agreed. As the record reveals, the court—communicating through an interpreter—ascertained that the defendant understood the situation and agreed to a jury of less than twelve jurors. Furthermore, both his attorney and the interpreter assured the court that he had been fully apprised of the problem and his rights.

4. Also unavailing is Yonn's similar argument that the government failed to establish Dozier's consent to the recording. In his testimony, Dozier unequivocally stated that he never recorded a conversation or appeared on a recording against his will. Trial Transcript at 146–47. The government represented to the court that Dozier had given prior authorization to law enforcement officials to monitor and to record the conversation. Yonn never disputed that

cials placed a microphone in the room reserved for Yonn. The microphone was connected to recording equipment concealed in an adjoining room where it could be monitored by the officers. Thereafter, the recorder was activated only when Dozier was present in the room. At the trial, the government introduced a tape of his conversation with Dozier and Sanes-Saavedra. On appeal, Yonn claims that the electronic monitoring of his motel room, without judicial authorization, violated the fourth amendment.

His argument ignores the fundamental tenet of modern fourth amendment jurisprudence: "the Fourth Amendment protects people, not places." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967). "The location of the conversations that were intercepted is not determinative; the proper inquiry is whether the government's activities in electronically listening to and recording the conversations violated privacy upon which [the defendant] justifiably relied." *United States v. Shields,* 675 F.2d 1152, 1158 (11th Cir.), *cert. denied,* — U.S. ——, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982). Under this inquiry, it is well-established that a constitutionally protected expectation of privacy does not attach to a "wrong-

doer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa v. United States,* 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374, 382 (1966).

Thus, the fourth amendment did not protect Yonn from the risk that Dozier would disclose the content of their discussions. Moreover, as the defendant concedes, there could have been no violation of his expectation of privacy if Dozier had made the recording with a device implanted on his person, rather than one concealed in the room. *See United States v. White,* 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453, 459 (1971). Nonetheless, the defendant urges the creation of a constitutional distinction which depends upon the location of the recording apparatus. The location of the electronic equipment does not alter the irrefutable fact that Yonn had no justifiable expectation of privacy in his conversation with Dozier. For that reason, the warrantless interception and recording of that conversation did not contravene the fourth amendment.[5]

### III.

The appellant, Hugo Sanes-Saavedra, first attacks the sufficiency of the indictment, contending that Count II, the

---

representation. Rather, he apparently assumed that Dozier had consented, and merely urged that Dozier lacked the authority to consent to the recording of a conversation occurring in another person's motel room. Having accepted the government's showing of consent at the trial, he cannot now attack its sufficiency on appeal.

**5.** We cannot accept the contrary reasoning of the First Circuit in *United States v. Padilla,* 520 F.2d 526 (1st Cir.1975). In *Padilla,* the court held that a recording made in circumstances identical to those in this case violated the fourth amendment. 520 F.2d at 528. While acknowledging that the defendant had no expectation of privacy in the conversation actually admitted into evidence, the court focused on the possibility that law enforcement agents could use the device to invade the defendant's protected privacy interests once the confidante had left the premises. *Id.* at 527. Because of that risk, the court suppressed all recordings made by the device placed in the motel room. *Id.* at 528.

We see no reason to suppress the recording of a clearly unprotected conversation merely because the monitoring technique employed poses a hypothetical risk that protected conversations may be intercepted. To some extent, any judicial sanction of electronic recording creates the potential for unauthorized interceptions. *See generally United States v. Principie,* 531 F.2d 1132, 1139–40 (2d Cir.1976), *cert. denied,* 430 U.S. 905, 97 S.Ct. 1174, 51 L.Ed.2d 581 (1977). Even when officers exceed the scope of a judicial authorization, courts will often still admit into evidence those recordings lawfully obtained. *See e.g., Principie,* 531 F.2d at 1139–41; *c.f. In re Search Warrant Dated July 4, 1977,* 667 F.2d 117, 130–31 (D.C.Cir. 1981) (seizure of items unauthorized by search warrant does not justify suppression of items lawfully seized) *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *accord United States v. Mendoza,* 473 F.2d 692, 696–97 (5th Cir.1973).

count under which he was convicted, was too vague to satisfy his sixth amendment guarantee to be informed of the government's accusation against him. *See Russell v. United States*, 369 U.S. 749, 761, 82 S.Ct. 1038, 1045, 8 L.Ed.2d 240, 249 (1962). To pass constitutional muster, an indictment must be sufficiently specific to inform the defendant of the charge against him and to enable him to plead double jeopardy in any future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590, 620 (1974). Those requirements are satisfied by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime. 418 U.S. at 117, 94 S.Ct. at 2907, 41 L.Ed.2d at 620–21; *see also United States v. Marable*, 578 F.2d 151, 154 (5th Cir.1978). In addition, "an indictment for conspiracy to commit a criminal offense need not be as specific as a substantive count." *United States v. Ramos*, 666 F.2d 469, 475 (11th Cir.1982).

■■■■ Against this background, the indictment here meets the test of specificity. Count II recites the essential elements of the offense charged against Sanes-Saavedra—knowingly conspiring to import a schedule I controlled substance into the United States, in violation of 21 U.S.C. §§ 952(a) and 963. It identified his alleged co-conspirators as well as the particular controlled substance. *See Ramos*, 666 F.2d at 474. The indictment also correctly set forth the time span of the conspiracy: from June 1, 1981 until the date of the indictment (November 24, 1981). *See Marable*, 578 F.2d at 154; *c.f. United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir.1979) ("open-ended" time frame considered insufficient). It further described the locale of the alleged conspiracy, at least partially, with the allegation that the criminal activity took place "in the Northern District of Florida and elsewhere." Taken as a whole, these allegations adequately set forth the offense charged.[6] *See Ramos*, 666 F.2d at 474–5; *c.f. Marable*, 578 F.2d at 154 (indictment charging conspiracy under 21 U.S.C. § 846 is sufficient if it "alleges a conspiracy to distribute drugs, the time during which the conspiracy was operative and the statute allegedly violated").

■■■■ Sanes-Saavedra next contends that the district court improperly allowed certain hearsay statements of his co-conspirators into evidence against him. The test for the admissibility of such statements under Fed.R.Evid. 801(d)(2)(E) is well established in this circuit. To warrant the admission of such testimony, the government must have "substantial independent evidence" showing (1) the existence of a conspiracy, (2) that the complaining defendant and the co-conspirator making the statement were both members of the conspiracy, and (3) that the statement was made during the course of and in furtherance of the conspiracy. *See, e.g., United States v. James*, 590 F.2d 575, 581 (5th Cir.) (*en banc*), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). A trial court's determination that the *James* standard has been satisfied is a finding of fact, subject to "clearly erroneous" review on appeal. *See, e.g., United States v. Bulman*, 667 F.2d 1374, 1379 (11th Cir.), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982).

■■■■ The evidence in this case adequately demonstrated Sanes-Saavedra's participation in the conspiracy. He accompanied Yonn on several occasions, including the trip to Paris, Texas to inspect a plane and a meeting with Dozier in Panama City, Florida. During that meeting, he discussed—by means of broken English and hand signals—the landing site and navigational

---

**6.** The defendant's comparison to the indictment struck down by the Ninth Circuit in *Cecil* is unpersuasive. In finding a count charging a § 963 conspiracy overly vague, that court primarily relied on two deficiencies: the failure to allege any overt acts and to establish a finite time frame. 608 F.2d at 1297. As mentioned earlier, the present indictment specifically cites the time period of the conspiracy. Additionally, no averment of overt acts in a § 963 charge is required in this circuit. *Marable*, 578 F.2d at 153–54; *see also United States v. Anderson*, 651 F.2d 375, 379 (5th Cir.1981).

route in Colombia and pointed to several possible landing sites. He was arrested on board the plane as it prepared to leave for Colombia. A search of his luggage revealed various toys and household goods, apparently destined for his family when he reached Colombia. Yet, he later told law enforcement officers that the men were traveling to Texas and that he had never seen the plane before that day, even though it was the same one they had inspected in Texas. Based on these facts, the district court's finding that "substantial independent evidence" established Sanes-Saavedra's participation in the conspiracy was not clearly erroneous.

■ The foregoing recitation also disposes of Sanes-Saavedra's contention that the evidence was insufficient to sustain his conviction. In reviewing this aspect of his appeal, we must examine the evidence in the light most favorable to the government, accepting all reasonable inferences that support the verdict. *See, e.g. Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942). In face of this principle, the defendant claims that the evidence was fully consistent with the theory that he was merely traveling as an innocent passenger, eager to return home, and not as a participant in a conspiracy to import marijuana. We note, however, that "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.) (Unit B *en banc*), *cert. granted,* —— U.S. ——, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982). Here the evidence of his travel and association with the conspirators, his assistance in planning the trip and selecting a landing site, the untruthful statements he later made to officers, as well as Yonn's hearsay statement that a young Colombian would serve as their guide, provide an ample basis for such a finding. The evidence was sufficient. *See United States v. Alvarez,* 625 F.2d 1196, 1198 (5th Cir.1980) (*en banc*), *cert. denied,*

451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981).

■ We also reject Sanes-Saavedra's final claim that the government's brief reference to his Colombian nationality in closing argument constituted prosecutorial misconduct. In view of defense counsel's repeated emphasis of that point during his own argument, the government's passing reference to the fact in rebuttal, taken in context, did not rise to the level of improper prosecutorial comment. *See, e.g., United States v. Cotton,* 631 F.2d 63, 66 (5th Cir.1980), *cert. denied,* 450 U.S. 1032, 101 S.Ct. 1743, 68 L.Ed.2d 227 (1981).

In summary, a careful examination of the record and consideration of the defendants' assignments of error discloses no reversible error in the trial court. Accordingly, the convictions of the appellants are

AFFIRMED.

HATCHETT, Circuit Judge, dissenting:

I respectfully dissent from the majority decision in this case. Although no expectation of privacy exists in a conversation lawfully overheard by the government, the conversation in this case was not lawfully overheard. The majority states that "the fourth amendment did not protect Yonn from the risk that Dozier would disclose the contents of the discussions." at 1347. True, but this sentence envisions a situation inconsistent with the facts in this case. Here, the issue turns, not on whether Dozier could lawfully disclose information to government agents, but rather, whether government agents could lawfully invade Yonn's hotel room, without court order or warrant, in order to record conversations in that room. This shift in facts makes all the difference. As the First Circuit pointed out in *United States v. Padilla,* 520 F.2d 526 (1st Cir.1975), the government erred because it did not first obtain judicial authorization to intercept the oral communications in the hotel room consistent with 18 U.S.C.A. §§ 2516 and 2518. 520 F.2d at 527. If the government had obtained judicial authorization for its actions, any

oral evidence obtained as a result of its investigation would have been lawfully obtained, and consequently could be entered into evidence. Alternatively, the government could have allowed Dozier to wear a body microphone on his person, *see United States v. White,* 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971), in order to avoid the requirement of judicial authorization for its interception operation. The government declined to take either route. Although the practicalities are the same, the legal principles are different.

Further, in this instance Dozier had no authority, in any event, to give his consent for the interception of conversations in someone else's hotel room where he did not live in the room and exercised no control over it. *See Stoner v. State of California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856, *rehearing denied,* 377 U.S. 940, 84 S.Ct. 1342, 12 L.Ed.2d 303 (1964) (search of hotel room conducted without consent of absent guest and without search warrant was unlawful even though hotel clerk consented to the search of the room). Nor did Yonn impliedly consent to a bugging device being placed in his room by allowing Dozier to reserve the room for him. Although Dozier obtained a reservation for Yonn, the room was reserved in Yonn's name. Yonn maintained an expectation of privacy, not that his conversations with Dozier would remain confidential, but that his hotel room would remain unbugged. The situation which the majority condones has dangerous implications; it is analogous to a secretary making hotel reservations for her employer's business trip, then giving the government her consent to bug the room. If the secretary entered the employer's room for a short time, would the initial intrusion become lawful?

The government attempts to dismiss the potential harm inherent in the above situation by arguing that the room microphone was turned on only when Dozier was present, so that only those conversations would be recorded. This does not cure the fourth amendment violation. The violation occurred with the placing of the unauthor-ized device. For these reasons, I believe the evidence obtained by the government through the placing of a microphone within Yonn's hotel room to be illegally obtained, and should have been suppressed.