[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13925
Non-Argument Calendar
_____

D.C. Docket Nos. 1:08-cr-20896-MGC-4; 1:11-cv-23080-MGC

DUANE MILLER,

                                                              Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

                                                              Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 3, 2014)

Before TJOFLAT, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

    Duane Miller, a federal prisoner proceeding *pro se*, appeals the district

court's denial of his motion to vacate, set aside, or correct his conviction and

sentence under 28 U.S.C. § 2255.  On appeal, Miller argues that the District Court erred by denying his § 2255 motion in which he claimed in relevant part that his trial counsel was ineffective for (1) failing to inform him of his right to testify at trial, and (2) failing to move to strike a juror who had been present in the courtroom during a hearing on Miller's motion *in limine* to exclude evidence. Although the District Court denied Miller's § 2255 motion, it granted a certificate of appealability ("COA") as to those two issues.  In his notice of appeal, Miller requested that we also consider a third issue he had raised in his § 2255 motion— that his trial counsel was ineffective at sentencing by failing to advise the District Court that he was entitled to receive credit for time served in state custody.  We construed his notice of appeal as a motion to expand the COA and denied the motion. In his appellate brief, Miller again argues that a COA was warranted as to the additional issue in his § 2255 motion.[1]

Upon review of the record and consideration of the parties' briefs, we affirm.

## I.

As part of an investigation into activities at several drug operations in Miami, separate wiretaps were established on the cellular telephones operated by

---

[1] In his appellate brief, Miller again argues that a COA was warranted as to the additional issue in his § 2255 motion.  We do not consider the argument.

John Ladson and Kilvin Jasmin.   Ladson and Jasmin each operated separate drug operations, but they discussed drugs sold, drug prices, and the presence of police in the area.   Jasmin employed several people in his business of selling drugs, including defendant Duane Miller and Danny Glover.   The intercepted phone calls revealed numerous instances when Jasmin and Miller discussed the sale of drugs.

A grand jury indicted Miller for conspiracy to possess with intent to distribute more than 50 grams of crack cocaine and detectable amounts of a mixture and substance containing cocaine and marijuana, in violation of 21 U.S.C. § 846.  The indictment alleged that the conspiracy began on or about March 1, 2007, and continued until on or about September 26, 2008.

Before trial, Miller filed a motion *in limine* to preclude the Government from introducing evidence under Federal Rule of Evidence 404(b).  The Government opposed the motion.  After jury selection, the District Court held a hearing, outside the presence of the jury, to address Miller's motion *in limine*.  At the hearing, the Government  began with providing notice of its intent to rely on Miller's prior state conviction for the purpose of seeking a sentencing enhancement that would increase the relevant statutory range under 21 U.S.C. § 841(b)(1)(A) to 20 years to life imprisonment.  Miller did not object to that notice.  But Miller did object to the Government's notice that it would introduce certain evidence, including testimony and recorded statements regarding related arrests and drug transactions that

3

occurred outside the timeframe of the indictment. Miller argued that the evidence was nothing more than propensity evidence that was not inextricably intertwined with the charged offense and that the Government was simply attempting to expand the indictment and the anticipated testimony.

At some point during the hearing, the Government advised the District Court that a juror was in the courtroom. The court verified that the individual was a juror in the case and excused her from the courtroom. The proceedings continued without further discussion about the juror. The District Court allowed the Government to introduce evidence of Miller's prior drug transactions outside the timeframe of the indictment in order to provide the relevant backstory regarding Miller's participation in the conspiracy for which he had been indicted. The court also permitted the Government to introduce evidence regarding Miller's September 2007, arrest for marijuana possession.

At the beginning of the trial, the District Court instructed the jury that: (1) it was the jury's duty to find the facts based on the evidence presented; (2) nothing said during the trial should be taken to indicate a particular verdict; (3) the evidence consisted of the witnesses' testimony, documents and other items received into evidence, and any facts agreed upon by the parties or instructed to be found by the court; and (4) statements, arguments, and questions by the parties' lawyers were not evidence.

At trial, Jasmin, who was serving a 15-year prison sentence, testified about Miller's involvement with drug transactions both inside and outside the timeframe of his indictment. Jasmin testified that he met Miller in 2001 or 2002. Miller eventually began working for him selling drugs, and Jasmin continued to keep in touch with Miller over the years, from 2001 to 2007. Miller's work for Jasmin in 2007 consisted of him bagging cocaine, delivering drugs, and serving as a lookout for the police. Jasmin testified about the events that transpired on December 6, 2007. On December 6, 2007, Jasmin was in his backyard with Miller and Glover when Glover got a phone call from John Ladson, the leader of another drug operation.  After Glover got off the call, he asked Miller to go with him somewhere. Glover had bagged drugs for Ladson before and Ladson had called Jasmin earlier in the day looking for Glover so Ladson could ask him to bag drugs. Jasmin thus assumed that Glover was going to go bag drugs and wanted Miller to go with him so he could do the same. Jasmin testified that he advised Miller not to go with Glover because Miller had just gotten out of jail the day before. Miller did not heed Jasmin's advice and left with Glover. Miller's counsel objected to Jasmin's mention of Miller's jail time, and the District Court sustained the objection. The Government then asked Jasmin whether Miller had bagged drugs for Ladson in the past, and Jasmin answered in the affirmative. Jasmin explained

5

that knew about Miller's history of bagging drugs for Ladson because Miller had done the bagging for Ladson in Jasmin's house.

Miller's attorney moved for a mistrial on the grounds that Jasmin's testimony that Miller had just gotten out of jail and had been separately involved with Ladson's drug organization was prejudicial and was not allowed by the court's ruling on the motion *in limine*. The District Court denied the motion for a mistrial but struck Jasmin's answer for inadequate foundation. The court also instructed the Government to clarify its questions. The court asked Miller if he wanted a limiting instruction, but Miller declined.

The Government also called as a witness a police officer with the City of Miami Police Department, William Goins, who described Miller's arrest for marijuana possession in September 2007. Goins testified that on September 6, 2007, he was on patrol when he smelled marijuana and saw a car parked in the middle of the road. He observed the occupants of the car, Miller and Glover, pass a marijuana cigarette between each other. When Goins pulled up next to the car, Miller dropped the marijuana cigarette to the ground. Goins approached the car, asked them to get out, and placed them under arrest for marijuana possession. Goins then searched the car and found in the glove compartment a bag of crack cocaine that weighed 70.6 grams. Goins testified that Miller was not charged for possession of crack cocaine; he was only charged with possession of marijuana.

6

The Government's cooperating witness, Jamal Pratt, also took the stand. Pratt, who at the time was incarcerated for selling drugs for Jasmin, testified about Miller's participation in Jasmin's drug organization. Pratt stated that Miller had to stop bringing drugs to Pratt in 2008 because Miller got arrested. Miller's attorney successfully objected to this testimony.

Miller did not testify at trial. On request of Miller's counsel, the District Court gave the jury instruction that it should consider similar uncharged criminal acts of Miller for the limited purpose of determining whether Miller had the state of mind or intent necessary to commit the charged crime.

The jury found Miller guilty of conspiracy to possess with the intent to distribute more than 50 grams of crack cocaine and detectable amounts of cocaine and marijuana. The District Court sentenced Miller to 240 months' imprisonment. Miller timely appealed. On appeal, Miller argued that the District Court erred in denying his motion *in limine* to preclude evidence of his history of drug dealing with Jasmin as early as 2001 and his September 2007 arrest for marijuana possession. *United States v. Miller*, 431 F. App'x 847, 854 (11th Cir. 2011). He also argued that the District Court erred by not granting a mistrial after Jasmin and Pratt testified that Miller had been to jail. Miller did not argue that his trial counsel was ineffective. We rejected both claims and affirmed Miller's conviction. *See Id.*

On August 28, 2011, Miller filed a motion to vacate, set aside, or correct his conviction and sentence under 28 U.S.C. § 2255 based on five claims of ineffective assistance of counsel.  The two claims at issue in this appeal are that Miller's trial counsel was ineffective for failing to allow him to testify and for failing to move to strike the juror who was present in the courtroom..  In support of his motion, Miller filed a declaration, which he signed under penalty of perjury, stating that his attorney never advised him that he had the right to testify and that he would have chosen to testify had he been informed of this right.  Miller also stated that his attorney told him that the juror's presence, though unusual, would not be an issue. The District Court referred the § 2255 motion to a Magistrate Judge, who issued a Report and Recommendation ("R&R"), recommending that the District Court deny the motion.  The judge also recommended that the District Court deny a certificate of appealability.  Over Miller's objections, the District Court adopted the R&R with respect to the merits.  The court issued a COA as to the above two claims.

II.

In a proceeding on a motion to vacate, set aside, or correct sentence, we review the district court's factual findings for clear error, and we review legal issues *de novo*.  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004). Whether counsel was ineffective is a mixed question of law and fact that we review *de novo*.  *Gomez-Diaz v. United States*, 433 F.3d 788, 790 (11th Cir. 2005).

8

We review a district court's decision to grant or deny an evidentiary hearing for abuse of discretion. *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005).

A prisoner in federal custody may file a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Unless the claimed error involves lack of jurisdiction or a constitutional violation, however, § 2255 relief is limited. *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. To establish a constitutional claim for ineffective assistance of counsel, a prisoner must prove two things: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the outcome of the case. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Because both prongs must be satisfied, we may decline to review either prong of this test if the prisoner makes an insufficient showing on the other prong. *Id.* at 697, 104 S.Ct. at

9

2069.  To prove deficient performance, the prisoner must show that counsel made errors so serious that he failed to function as the counsel guaranteed by the Sixth Amendment.  *Id.* at 687, 104 S.Ct. at 2064.  We measure attorney performance based on prevailing professional norms, and scrutiny of counsel's performance is highly deferential.  *Id.* at 688-89, 104 S.Ct. at 2065.  A strong presumption exists that counsel's performance fell within the range of reasonable professional assistance.  *Id.* at 689, 104 S.Ct. at 2065.  If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment.  *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000).

To establish prejudice under *Strickland*'s second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  A reasonable probability is one sufficient to undermine confidence in the outcome.  *Id.*  The defendant cannot merely show that the error had some conceivable effect on the outcome of the proceeding.  *Id.* at 693, 104 S.Ct. at 2067.

III.

A.

10

Miller argues that he was denied effective assistance of counsel during trial because his attorney failed to inform or otherwise advise him that he had the right to testify on his own.   In support of this argument, Miller asserts that his testimony would have cleared up any misconceptions the jury would have had about the 70.6 grams of crack cocaine found in the car with him during his September 2007, arrest for marijuana possession.  Miller contends that the District Court erred in denying an evidentiary hearing to resolve whether his attorney had advised him about his right to testify.

"[A] criminal defendant has a fundamental constitutional right to testify in his or her own behalf at trial." *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (*en banc*).  Defense counsel invades this right by either refusing to accept the defendant's decision to testify or failing to inform the defendant of the right to testify.  *Id.* at 1534.

To establish the deficient performance prong of his ineffective counsel claim, Miller presented his own self-serving statement that his attorney failed to inform him of his right to testify.  Miller, however, did sign this statement under penalty of perjury, and there was no contrary evidence in the record indicating that his attorney did inform him of his right to testify.  Additionally, the content of Miller's affidavit was not clearly improbable, and failing to inform Miller of his right to testify, if true, would have constituted deficient performance.  When the

11

record is unclear as to what took place, it is presumed that Miller's attorney exercised reasonable professional judgment, *Chandler*, 218 F.3d at 1315 n.15, but in the absence of evidence contradicting Miller's statements, Miller may be able to establish deficient performance.

But even assuming, *arguendo*, that Miller establishes deficient performance, his claim still fails because he cannot establish prejudice. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Miller states that his testimony would have cleared the misconceptions the jury had about the September 2007 arrest. The case against Miller, however, consisted of other, significant testimony regarding his involvement in the conspiracy. Jasmin testified that Miller bagged cocaine, delivered drugs, and looked out for police. Pratt also testified about Miller's involvement in Jasmin's drug organization. In light of this testimony from other witnesses about Miller's involvement in the conspiracy—testimony that sufficiently established his guilt—the fact that Miller did not testify to clear up the story surrounding a previous arrest was insufficient to undermine confidence in the trial's outcome. *See Strickland*, 466 U.S. at 694, 104S.Ct. at 2068. Because Miller cannot demonstrate prejudice, an evidentiary hearing was unnecessary to resolve the factual issues of whether Miller's attorney in fact advised him of his right to testify at trial. *See Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (holding that an evidentiary hearing is not necessary when the record

conclusively shows that a habeas petitioner was not denied effective assistance of counsel). Accordingly, the District Court did not err in refusing to grant an evidentiary hearing on whether Miller's attorney had advised him about his right to testify and in ultimately denying § 2255 relief on the grounds that Miller's attorney provided ineffective assistance in failing to inform him about his right to testify on his own behalf.

### B.

Miller also argues that his attorney was ineffective for failing to move to strike the juror that was in the courtroom during the hearing on Miller's motion *in limine*. He contends that the District Court erred for failing to grant an evidentiary hearing to determine whether the juror was biased.

Unfortunately for Miller, he cannot establish deficient performance or prejudice arising from his attorney's failure to seek dismissal of the juror. When the Government advised the District Court about the juror's presence in the courtroom, the District Court responded by dismissing the juror. Miller concedes that the record does not contain any evidence establishing what, if anything, the juror overheard or even how long the juror had been present. Additionally, at no point during the hearing on the motion *in limine*, did any party express any concern about the juror's presence in the courtroom.

A trial court possesses broad discretion in determining how to proceed when confronted with allegations of juror bias. *United States v. Yonn*, 702 F.2d 1341, 1344-45 (11th Cir. 1983). The discretion extends to the initial decision of whether or not to interrogate jurors regarding bias. *Id.* 1345. The more speculative or unsubstantiated the allegation of juror misconduct, the lower the burden is for a trial court to investigate. *United States v. Caldwell*, 776 F.2d 989, 998 (11th Cir. 1985). "In the absence of a colorable showing that the conduct complained of impugned in any way the integrity of the trial process, the district court [is] not required to make further inquiries or to conduct a hearing and its refusal to do so did not constitute an abuse of discretion." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984). Where, as here, Miller cannot establish whether the juror was tainted by what she heard and the District Court enjoys wide discretion in addressing such allegations, Miller cannot establish deficient performance on the part of his attorney.

Even assuming that Miller could establish deficient performance, his ineffective assistance claim would still fail because he cannot establish that failing to strike the juror prejudiced the outcome of his trial. After dismissing the juror from the hearing on the motion *in limine*, the District Court gave jury instructions regarding what constituted evidence in the case and the proper consideration of such evidence. Jurors are presumed to follow the trial court's instructions. *United*

14

*States v. Ramirez*, 426 F.3d 1344, 1352 (11th Cir. 2005). Thus, the jury instructions mitigated any information that the juror might have overheard concerning the potential sentence Miller was to receive or extrinsic evidence of activity that took place outside of the charged conspiracy. Moreover, in light of Jasmin and Pratt's testimony establishing Miller's guilt for his participation in the conspiracy, Miller cannot show that failing to strike the juror undermined confidence in the trial's outcome. Accordingly, the failure to strike the juror was simply insufficient to prejudice the outcome of the trial. *See Strickland*, 466 U.S. at 694, 104S.Ct. at 2068.

For the foregoing reasons, the District Court's decision is

AFFIRMED.