JORDAN, Circuit Judge,
concurring.
For me, the claim regarding the district court’s decision not to question Juror One about the note she submitted on the second day of trial is a close one. But the decision as to whether to interview a juror is a matter within the district court’s discretion, see United States v. Yonn, 702 F.2d 1341, 1345 (11th Cir.1983), and given the deference embodied in the abuse of discretion standard, see In re Rasbury, 24 F.3d 159, 168 (11th Cir.1994), I agree with the Court that there is no reversible error.
There were, however, good reasons for questioning Juror One about 'her note. That note, in full, read as follows: “I am aware of Mr. Aristide’s problems in Haiti, charges of corruption, etc., etc.” As far as I can make out from the record, Juror One did not indicate during voir dire that she had read any media reports concerning Mr. Aristide, the former president of Haiti. That understanding is confirmed by the colloquy between defense counsel and the district court after the receipt of the note. So the note Juror One provided to the district court likely meant one of two things. The first was that Juror One had remembered something she had not disclosed during voir dire. The second was that, between the time of jury selection and the beginning of trial, Juror One was exposed to information of one sort or another concerning “Mr. Aristide’s problems in Haiti, charges of corruption, etc., etc.” Both of these scenarios were potentially problematic. If Juror One answered questions incorrectly during voir dire, the parties and the district court needed to know which ones so that they could figure out whether to replace Juror One with an alternate. And if Juror One was exposed to harmful information after jury selection, the parties and the district court needed to find out what that information was, and determine whether Juror One could put it *1339 aside in evaluating the evidence presented at trial.
Moreover, Juror One’s note, after mentioning Mr. Aristide’s “problems in Haiti” and “charges of corruption,” ended with “etc., etc.” Because “et cetera” generally means “similar things,” and “so on,” 1 Shorter Oxford English Dictionary 863 (5th ed.2002), the better and safer route was to find out what Juror One meant by “etc., etc.” Cf. United States v. Caldwell, 776 F.2d 989, 998 (11th Cir.1985) (“The more serious the potential jury contamination, especially where alleged extrinsic evidence is involved, the heavier the burden to investigate.”). And speaking to Juror One would not have risked contaminating the other members of the jury, as the district court could have questioned her individually.
With these comments, I join the Court’s opinion.