UNITED STATES of America, Plaintiff,

v.

Charles HOYE, Defendant.

No. CR 87–00190–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 8, 1987.

Henry E. Hudson, U.S. Atty., John T. Martin, Asst. U.S. Atty., Alexandria, Va., for plaintiff.

Charles Hoye, pro se.

Thomas K. Berger, Fairfax, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

Defendant is the subject of a multiple count indictment charging, *inter alia,* conspiracy to distribute cocaine, possession of cocaine with intent to distribute and unlawful possession of a firearm. He moves, *pro se,* to dismiss the indictment and to suppress evidence obtained from a variety of sources. For the reasons stated here, these motions must be denied. Defendant, who is currently incarcerated, makes a further oral motion requesting that he be permitted to wear his clothes, rather than prison garb, for all hearings and trial.[1] This motion, for the reasons noted, is granted in part and denied in part.

### FACTS [2]

In October, 1986, the Drug Enforcement Agency (DEA) arrested Alvaro DeAngulo, apparently a pivotal figure in a cocaine distribution network. Coincident with this event, DEA agents began investigating defendant's activities, as they had information linking him with the DeAngulo network. In connection with the DEA investigation of defendant, DEA Agent Robinson called defendant and indicated that he, Robinson, wished to speak to defendant at his home. Defendant did not object, and Agent Robinson, accompanied by Agent Lewandowski, then went to defendant's home.

Before the agents arrived, defendant called his lawyers, who were apparently unavailable at that time. When the agents arrived, the defendant allowed them to enter his home. At the outset, Agent Robinson generally advised defendant of his *Miranda* rights and specifically advised defendant that he had the right to refuse to

---

1. Defendant's oral motion arguably extended only to the hearing on that date, though discussion of the motion focused more broadly on hearings generally and the trial. The Court exercises its discretion to construe defendant's motion generously to cover future hearings and the trial as it seems fair and appropriate to do so.

2. The facts recited here are derived from the testimony taken at the hearing on the defendant's motions held on September 11, 1987, and from a stipulation entered into by the defendant and the United States.

talk to the agents. Despite the warnings, defendant initially agreed to answer the agents' questions. Soon thereafter, however, defendant's attorneys returned his call and instructed him to remain silent. Defendant so advised the agents, who then left.

The defendant concedes that the agents' questioning ceased as soon as he advised them of his desire to remain silent. Defendant also acknowledges that he was not placed under arrest at any time during the agents' visit.

Thereafter, defendant's lawyer notified Agent Robinson by letter that defendant was represented by counsel and that further questions concerning the defendant should be directed solely to counsel. As a result, DEA agents then ceased direct efforts to question defendant. Instead, the agents engaged a confidential informant and directed him to contact defendant and establish a relationship with him. The informant succeeded, and through his contacts with defendant, DEA agents were able to obtain incriminating audio and video tapes, which are among the subjects of defendant's motion to suppress.[3]

Defendant was ultimately arrested on June 27, 1987. DEA Agent William King's testimony described the events surrounding the arrest. At approximately 2:30 p.m. on June 26, the day prior to the arrest, King observed defendant getting into a 1987 gray Pontiac Sunbird behind his apartment. After driving some distance, defendant picked up a man, drove him to the so-called "drug corridor" of the District of Columbia and there dropped him off. Agent King observed the passenger return to the car five minutes later, and after looking around nervously, the passenger got back in the car. Defendant returned

this passenger to his original location and then drove back to his apartment where he picked up a second person. From there defendant and this second passenger drove to a bank: defendant entered the bank, remained there for approximately five minutes and then returned to the car. Next, defendant and his passenger returned to defendant's apartment which both entered.

At this point, DEA's informant, who had been observing defendant along with the DEA agents, went to defendant's door where defendant through a speaker asked the informant whether the informant had the "papers." The informant and the agents understood the word "papers" to mean cocaine. The informant answered in the negative, but asked to see the defendant. The defendant replied that he was in "the middle of something big" and could not be disturbed. The informant then gave defendant a number where he could be reached. Later that day, defendant called the informant and they arranged to meet at a Crystal City hotel.

When defendant arrived at the hotel room, Agent King was present posing as a cocaine seller for the DeAngulo organization. After his arrival, defendant engaged Agent King and the informant in conversation concerning defendant's proposal to buy five kilograms of cocaine to *resell*.[4] The meeting continued for approximately 20 minutes, at which time defendant was arrested.

Defendant had arrived at the hotel with a black leather bag and had held it in his lap during the approximately 20 minute conversation that preceded his arrest. Near the end of this conversation, defendant placed the bag an arm's length away from his body. Agent King searched the bag at

3. The tapes revealed, among other things, that the defendant had previously been connected with the DeAngulo cocaine network. The tapes also indicate that defendant and the informant discussed a cocaine-related debt which the defendant owed to the DeAngulo organization, as well as a repayment plan which would involve the defendant receiving a shipment of cocaine and reselling it. The tapes also reflect that the defendant had been in the drug business for seventeen years. When the defendant and the informant discussed cocaine, the defendant

sometimes used the terms "papers" or "legal papers" as code words for "cocaine," and the unit of measure the two talked about was the kilogram, the weight measure customarily used by those dealing in cocaine.

4. The video tape of this meeting is apparently among the subjects of the motion to suppress, although it is not specifically mentioned in defendant's brief.

the time of the arrest and found no contraband. Next, defendant and the bag were taken to the Fairfax Adult Detention Center where defendant was to be temporarily held. On Monday, July 29, Agent King transported defendant and the bag to a United States Magistrate's Court in Alexandria. Before delivering the bag to the United States Marshal, Agent King conducted a routine inventory search of the bag pursuant to DEA procedures. Again, Agent King emptied the bag and found no contraband. This time, however, he noticed that the bag seemed heavy despite his having emptied it. Further inspection revealed a loaded Walther PPK automatic handgun concealed in a compartment in the bottom of the bag.

Following defendant's arrest on June 27, Agent King returned to the hotel to find parked there the 1987 gray Pontiac Sunbird defendant had driven the previous day. Agent King opened the car with a key obtained from defendant at the time of arrest. The car was then impounded and subjected to a routine inventory search pursuant to standard DEA operating procedures. Defendant's motion to suppress includes the contraband and incriminating evidence recovered in the routine inventory search of this car.

Agent King also impounded a 1983 black BMW found parked behind defendant's apartment. Agent King had observed defendant driving this vehicle to numerous meetings with the informant, meetings in which defendant and the informant had discussed sales of cocaine. A standard DEA inventory search of this vehicle also disclosed contraband and incriminating evidence which defendant seeks to suppress.

Finally, DEA agents searched defendant's apartment pursuant to a search warrant, which defendant attacks here. Agent Robinson's affidavit in support of the warrant request (1) stated that the confidential informant and the defendant were involved with and were a part of the DeAngulo cocaine distribution ring; (2) recited that

defendant had sought to purchase five kilograms of cocaine for resale at the time of the arrest; (3) stated that the informant's statements which the Agent had attempted to verify had all been found to be true; and (4) recited the suspicious activities of June 26, 1987.

## THE MERITS

Defendant moves to dismiss the indictment on the grounds that the facts establish the defense of entrapment as a matter of law and that the DEA agents' conduct was so outrageous that it violated the Fifth Amendment.

Defendant also seeks to suppress the audio and video tape evidence of his cocaine dealing on grounds that they were obtained in violation of his Fourth, Fifth and Sixth Amendment rights. Further, defendant challenges on Fourth Amendment grounds the searches of the black leather bag, the 1987 Pontiac, the BMW and his apartment. Each of these contentions, as well as the clothing issue, is separately discussed.

### A. Alleged Entrapment and Outrageous Government Conduct

■ The record discloses no facts that warrant concluding as a matter of law either that defendant was entrapped or that the government's conduct was unconstitutionally outrageous. On the contrary, the record, in its present state, points in the opposite direction; there is currently, apart from defendant's allegations, no evidence of entrapment. In any event, the current record simply does not permit any conclusion as a matter of law that these defenses have been established.[5] *See United States v. Persico,* 520 F.Supp. 96, 98 (E.D.N.Y. 1981) (declining to rule on entrapment and due process defenses until evidence was presented at trial). Indeed, entrapment, by its nature, is inherently and typically an issue for the jury. *United States v. Grubbs,* 776 F.2d 1281, 1285 (5th Cir.1985); *United States v. So,* 755 F.2d 1350, 1354

---

**5.** To the extent that the defendant's Fifth Amendment due process defense is a question of law, *see United States v. Dougherty,* 810 F.2d

763, 770 (8th Cir.1987), the Court finds that the agents' conduct was well within constitutional bounds.

(9th Cir.1985). Accordingly, defendant's motion to dismiss the indictment is denied.

## B. *Exclusion of Audio and Video Tapes*

Defendant claims that the audio and video tapes should be suppressed because they were obtained after defendant advised the DEA agents that he was represented by counsel and did not wish to speak to them. Defendant apparently contends that DEA's surreptitious audio and video recording of his activities after DEA knew he was represented and did not wish to speak to the agents infringed his Sixth Amendment right to effective counsel. Although defendant places chief reliance on the Sixth Amendment, he also claims this DEA conduct violated his Fourth and Fifth Amendment rights. All of these claims are without merit.

■ First, defendant's Sixth Amendment right to counsel attaches "only at or after the initiation of adversary judicial proceedings against the defendant." *United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 2296–97, 81 L.Ed.2d 146 (1984). In effect, therefore, the right to counsel comes into play only after the filing of formal charges, an indictment or information. *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972) (plurality opinion). Here, defendant had neither been arrested nor indicted at the time the tapes were made. No credible claim can be made that defendant's Sixth Amendment protections were involved simply by virtue of defendant's statement that he was represented by counsel and would not answer questions. The law is uniformly and sensibly to the contrary. As the Supreme Court noted, "we have never held that the right to counsel attached at the time of arrest." *United States v. Gouveia,* 467 U.S. 180, 190, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984).

In *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), the Court rejected an argument quite similar to that advanced here. There, a government informant infiltrated the defendant's organization before the defendant was arrested or indicted. At trial the informant testified to a number of incriminating statements that defendant had made. *Id.* at 296, 87 S.Ct. at 410. Seeking to suppress this evidence, that defendant argued that the government's use of the informant, after it had probable cause to indict him, abridged his Sixth Amendment right to counsel. *Id.* at 309–10, 87 S.Ct. at 417. The Court rejected the argument, stating that:

> There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long.

*Id.* at 310, 87 S.Ct. at 417.[6]

The defendant's argument, if accepted, would effectively immunize suspected criminals from any undercover investigation once they inform law enforcement officials that they are represented by counsel. This nonsensical result is not required by the Sixth Amendment. Accordingly, defendant's motion to suppress the audio and video tapes on Sixth Amendment grounds is denied.

■ Defendant's Fourth Amendment argument is equally flawed. Use of a confidential informant or undercover agent does not constitute a constitutional violation. *Hoffa* so held. There, in rejecting an argument essentially similar to defendant's here, the Court stated that "neither . . . [the Supreme Court] nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa,* at 302, 87 S.Ct. at 413. Significantly, here, as in *Hoffa,* the informant was not an eavesdropper. The recorded incriminating statements were either directed to the informant or knowingly made in his presence. Under these circumstances, the Fourth Amendment is simply not implicat-

---

**6.** The Third Circuit reached the same result on similar facts. *See United States v. Mitlo,* 714 F.2d 294, 296–97, *cert. denied,* 464 U.S. 1018, 104 S.Ct. 550, 78 L.Ed.2d 724 (1983).

ed. Defendant assumed the risk that the informant would disclose any of defendant's incriminating statements. Defendant's Fourth Amendment leg of his suppression motion is fatally lame.

■ Finally, defendant claims that the surreptitious taping violated his Fifth Amendment rights. The essential deficiency in this argument is that the "custodial interrogation" necessary to implicate the Fifth Amendment protections [7] never occurred. *Miranda* defined "custodial interrogation" as occurring only when a subject has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *United States v. Locklear,* 829 F.2d 1314, 1316-17 (4th Cir.1987) (non-custodial voluntary incriminating statements are admissible). Defendant was not taken into custody prior to or during the recorded statements, nor was he deprived of his freedom of action in any significant way. Contrary to defendant's claim, custody does not result merely because an individual is the focus of a criminal investigation. *See Beckwith v. United States,* 425 U.S. 341, 345, 96 S.Ct. 1612, 1615-16, 48 L.Ed.2d 1 (1976). Defendant's motion to suppress on Fifth Amendment grounds is therefore denied.

## C. *Search of Bag*

■ The search of the bag disclosed a pistol. Defendant claims that the search, which occurred some 48 hours after the arrest, contravened the Fourth Amendment, as it was not incident to the arrest. The Court holds otherwise: the search was proper, both as an inventory search and as a search incident to the arrest.

The Supreme Court in *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), held that articles subject to a search at the time and place of a lawful arrest may be searched without a warrant even though a "substantial period of time has elapsed between the arrest and

subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other." *Id.* at 808, 94 S.Ct. at 1239. Here, the bag was in defendant's lap or within an arm's length from defendant during the entire twenty minutes before his arrest. Therefore, a search of the bag was appropriate without a warrant at the time the defendant was arrested. *See Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Further, the defendant does not contest that his arrest was supported by probable cause. Nor did an unreasonably long amount of time elapse between the arrest and the search. *See Edwards,* 415 U.S. at 809-10, 94 S.Ct. at 1239-40. Thus, under *Edwards,* the search of the bag was lawful.

■ Agent King's testimony also established that the search of the bag was conducted pursuant to standard inventory procedures. It is well settled that such warrantless inventory searches are lawful. *Illinois v. Lafayette,* 462 U.S. 640, 648, 103 S.Ct. 2605, 2610-11, 77 L.Ed.2d 65 (1983).

## D. *Search of the Vehicles*

### 1. *Search of the 1987 Gray Pontiac*

■ The defendant seeks to suppress contraband seized from the 1987 gray Pontiac which he was driving on the night of his arrest. Specifically, he objects to the search of a closed, brown leather bag which was found inside the car. The Court holds that the search of the car and its contents was proper, both because it was supported by probable cause and because it was conducted according to standard inventory procedures.

The agents involved in the investigation of the defendant observed him driving the Pontiac on the day prior to his arrest. The defendant's activities were suspicious. In light of what the agents saw and what they knew about the defendant, they had probable cause to believe that the car contained evidence of drug trafficking. A complete

7. *See Beckwith v. United States,* 425 U.S. 341, 345-47, 96 S.Ct. 1612, 1615-17, 48 L.Ed.2d 1 (1976).

search of the vehicle and its contents was therefore justified under the Supreme Court's holding in *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982). There, the Court stated that if a law enforcement officer has probable cause to believe that a vehicle contains evidence of crime, he may search "every part of the vehicle and its contents that may conceal the object of the search." *Id.*

■ The search of the Pontiac also falls within the inventory exception to the warrant requirement. DEA officials lawfully impounded the car pursuant to 21 U.S.C. § 881(b)(4), which authorizes the warrantless seizure of a vehicle when there is probable cause to believe that the vehicle has been used for drug trafficking. After the agents had impounded the vehicle, they conducted a routine inventory search, found the bag and searched it.

An essentially similar search was upheld in *Colorado v. Bertine*, — U.S. —, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). There the Court approved the warrantless search of a backpack as part of an inventory of the contents of a car before it was impounded. *Id.* at 742. The same result is appropriate here, and the defendant's motion in this regard is therefore denied.

### 2. *The BMW Search*

■ As with the Pontiac, the DEA agents had more than adequate probable cause to perform a full search of the BMW and its contents. Agents had seen the defendant driving the car to meetings with the informant at which the two discussed a proposed cocaine transaction. Defendant also talked to the informant from a phone in the BMW. Agent King testified that in his experience, cocaine distributors commonly keep records concerning debts for cocaine purchases and their customers' telephone numbers in their cars. Agents had a substantial basis for concluding that evidence of drug trafficking would be found in the car, and the search was therefore proper. *See United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572. Further, the search, which

was conducted in accordance with standard inventory procedures, was justified under *Colorado v. Bertine*, 107 S.Ct. at 742.

### E. *The Search of Defendant's Apartment*

■ The defendant argues that the search of his apartment was unconstitutional because the search warrant was not based on probable cause. Under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), a reviewing Court must assess whether an affidavit provided the magistrate with "a substantial basis for determining the existence of probable cause." *Id.* at 240, 103 S.Ct. at 2333. The affidavit at issue here was sufficient. It recited in detail Agent Robinson's grounds for believing that the defendant's apartment contained evidence of crime. These grounds included: (1) the information given by the confidential informant, whom Agent Robinson had found to be reliable; (2) surveillance of the defendant; and (3) the fact that the defendant was arrested after he had stated during a meeting with persons he believed to be cocaine sellers that he wanted to purchase a large quantity of cocaine to resell. Because the warrant was supported by probable cause, the defendant's motion to suppress evidence seized from his apartment is denied.

### F. *Refusal to Allow Defendant to Wear Civilian Clothing at the Hearing*

■ There is, manifestly, no prejudice to defendant as a result of having to wear prison garb for the hearing. Defendant's clothing has no effect on the Court. There are, moreover, practical security considerations to be weighed in the balance, and at pretrial motions, the balance does not weigh heavily in favor of requiring the authorities to permit defendant to wear his civilian clothes. At trial, however, the balance swings sharply in the opposite direction. Accordingly, the Court broadly construes defendant's oral motion on this issue and grants it for trial, but denies it for pretrial proceedings.

An appropriate order will issue reflecting these rulings.