UNITED STATES of America,
Plaintiff–Appellee,

v.

Daniel Enrique LAETIVIDAL–GONZALEZ, a/k/a "Ki Ki"; and Gonzalo Ocampo, Defendants–Appellants.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Shirley BROWN, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Luis Felipe GONZALEZ,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Luis Miguel ROSARES–MARTINEZ,
Defendant–Appellant.

Gonzalo OCAMPO,
Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

Nos. 89–3499, 89–3546, 89–3565, 89–3574 and 90–3235.

United States Court of Appeals,
Eleventh Circuit.

Aug. 27, 1991.

Joseph M. Diaz, Diaz & Athan, P.A., Tampa, Fla., for defendants-appellants.

Eric M. Cohen, Eric M. Cohen, P.A., Coral Gables, Fla., for Ocampo.

Florence W. Foster, Robert A. Foster, Jr., Tampa, Fla., for Shirley Brown.

Carlos A. Pazos, Tampa, Fla., for Luis Felipe Gonzalez.

Jeffrey Downing, Tamra Phipps, Gregory W. Kehoe, Asst. U.S. Attys., Tampa, Fla., for U.S.

Before JOHNSON and COX, Circuit Judges, and ENGEL *, Senior Circuit Judge.

ENGEL, Senior Circuit Judge:

The five appellants in this case were convicted or pled guilty to criminal conspiracy charges arising from their participation in a cocaine importation scheme from April through August, 1987. They raise several challenges to their convictions and sentences in this direct appeal, while defendant Ocampo's appeal of his conviction has been combined with his appeal of the denial of his Motion to Vacate Sentence under 28 U.S.C. § 2255. We find that the sentences of all five appellants were improperly calculated, and remand their cases for resentencing as discussed below. All other grounds of appeal raised by the appellants are denied.

The U.S. Customs Service, using undercover agents, infiltrated a drug ring based in central and southern Florida in 1987. The conspirators planned to bring large shipments of cocaine to the United States from Colombia. Luis Gonzalez arranged sea and air transportation for the drugs, and unwittingly negotiated with undercover agents, telling them he would bring 2,800 kilograms of cocaine from Colombia to Florida. Luis Rosales–Martinez invested approximately $40,000 in the smuggling venture, and bribed Colombian Narcotics Police to ensure the security of the departing drug shipment.[1] Shirley Brown invested $5,000 in the cocaine scheme. Daniel Laetividal–Gonzalez inspected the airstrip where the plane bearing the drugs was to land in Florida, and agreed to drive a van carrying the drugs from the Inverness, Florida airstrip to Miami. Gonzalo Ocampo represented the seller of 1,200 kilograms of cocaine, and discussed with Gonzalez and others the arrangements for the drug shipment. The government's undercover investigation lasted several months, and the con-spirators were arrested shortly before the drugs were to leave Colombia.

A grand jury indicted the defendants in April 1988 on conspiracy charges. Defendants Luis Gonzalez and Luis Rosales–Martinez each pled guilty to one count of conspiracy to import cocaine, a violation of 21 U.S.C. §§ 952(a) and 963. Defendant Shirley Brown entered a conditional plea to the same charge, reserving her right to challenge the denial of her motion to suppress audio and video recordings made by the U.S. Customs Service during the investigation. The remaining defendants, Gonzalo Ocampo and Daniel Laetividal–Gonzalez, were tried before a jury and were found guilty of conspiracy to import cocaine (21 U.S.C. §§ 952(a) and 963), and conspiracy to possess with intent to distribute cocaine (21 U.S.C. §§ 841(a) and 846).

Judge Castagna sentenced Laetividal–Gonzalez on June 15, 1989 to twelve years imprisonment without parole. On the same date, Ocampo received a fifteen-year sentence without parole. On June 20, 1989, Shirley Brown received a five-year sentence without parole. On July 6, 1989, Rosales–Martinez was sentenced to fifteen years imprisonment without parole. Finally on July 7, 1989, Gonzalez received an eighteen-year sentence with no parole. All are now incarcerated. Each appellant is represented by separate counsel, and we address each appeal individually as indicated below.

## DANIEL LAETIVIDAL–GONZALEZ

■ Defendant Laetividal–Gonzalez was convicted by a jury on two related conspiracy charges. A review of the transcript from his June 15, 1989 sentencing hearing indicates that the district judge believed that a mandatory minimum sentence applied to the charges, and that no possibility of parole existed. The government concedes that these were incorrect interpretations of the applicable law, and that the

---

* Honorable Albert J. Engel, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. Rosales–Martinez' name was incorrectly spelled as Rosares–Martinez in the Superseding

Indictment. Though the caption of this case continues to reflect this error, we will refer to Rosales–Martinez by his proper name.

district judge erroneously sentenced Laetividal–Gonzalez as a result.

This court has ruled that under the law as it existed at the time relevant to the defendants in this case, minimum mandatory sentences were required for substantive drug trafficking offenses, but not for drug conspiracy counts such as those at issue here. *See United States v. Giltner,* 889 F.2d 1004, 1009 (11th Cir.1989); *United States v. Rush,* 874 F.2d 1513, 1514 (11th Cir.1989). While convictions for the importation of more than five kilograms and the possession with the intent to distribute more than five kilograms of cocaine carried mandatory minimum prison sentences in 1987, conspiracy convictions for those same activities did not. This disparity was eliminated in 1988, when 21 U.S.C. §§ 846 and 963 were amended to clearly require the same mandatory minimum penalties without parole for both conspirators and substantive offenders. *Giltner* and *Rush* indicate, however, that these amendments do not apply to sentences imposed for criminal activity conducted prior to November 18, 1988, the effective date of the statutory amendments. Here, the defendants' illegal activity took place in 1987, and no mandatory minimum sentences applied to their conspiracy convictions.

■ In addition, the government now concedes that the district court erroneously sentenced the defendants to prison terms without possibility of parole. Under 18 U.S.C. § 4205(b) (1982), when imposing a term of imprisonment exceeding one year, a district court may:

> (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed by the court, or (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the [U.S. Parole] Commission may determine.

Though 18 U.S.C. § 4205 was repealed by Pub.L. 98–473, Title II, § 218(a)(5), Oct.

12, 1984, 98 Stat. 2027, this change in the law did not take effect until November 1, 1987. The old section 4205 remains in effect for ten years, and applies to individuals who committed federal offenses prior to November 1, 1987. In this case, the conspiracy took place between April and August of 1987, so section 4205's parole provision applies to the five defendants.

While the decision whether or not to grant parole to an eligible defendant rests with the U.S. Parole Commission under 18 U.S.C. § 4206 (a statute which, like section 4205, has been repealed but remains effective for persons sentenced for illegal activities committed before November 1, 1987), the district court cannot limit the parole eligibility of the defendants in this case once they have served one-third of their sentences.

■ Under the current version of 21 U.S.C. § 960, persons convicted for the crimes at issue here are ineligible for parole during the terms of their imprisonment. However, this language was inserted in the statute through Pub.L. 99–570, Title I, § 1302, Oct. 27, 1986, 100 Stat. 3207, 3207–17. Again, the effective date of this "no parole" provision was November 1, 1987, which post-dated the criminal activities for which the defendants were sentenced here. A defendant is to be sentenced according to the law in effect on the date of the offense. *United States v. Burgess,* 858 F.2d 1512, 1513 (11th Cir.1988). Because the district court sentenced Laetividal–Gonzalez and all of the other conspirators under the mistaken belief that nonparoleable sentences were required or permissible, the cases must all be remanded for resentencing on the issue of the possibility of parole.

The SENTENCE imposed on Laetividal–Gonzalez is VACATED, and the case REMANDED for resentencing in a manner not inconsistent with this opinion.

### SHIRLEY BROWN

For the above-stated reasons, Shirley Brown is entitled to resentencing on the

question of paroleability. *See* 18 U.S.C. § 4205 (1982).

However on the question of a mandatory minimum sentence, a review of the record from Brown's June 20, 1989 sentencing hearing indicates that the district judge properly understood that no mandatory minimum sentence applied to her conspiracy conviction. No correction to Brown's sentence on this question is thus warranted.

Shirley Brown's role in the conspiracy was limited to her investment of $5,000 in the drug smuggling venture. Rick Dressler, an undercover confidential informant working for the U.S. Customs Service and the Florida Department of Law Enforcement, rented desk space in Brown's Tampa, Florida real estate office from April through August 1987. Shirley Brown consented to this arrangement, though she was unaware that Dressler was a confidential informant. According to the government, at the time Dressler rented the office space, Shirley Brown was under suspicion for possible money laundering as a result of prior conversations with an undercover Internal Revenue Service agent. The evidence indicates that at the time Dressler rented the office space, Shirley Brown was not involved in the drug importation conspiracy however.

Florida law enforcement officers, with Dressler's knowledge and consent, secretly installed audio and video recording equipment in the office Dressler had rented. On June 27, 1987, Shirley Brown voluntarily entered the office she had rented to Dressler, and engaged in a conversation with Dressler and an undercover special agent there. Shirley Brown expressed a desire *to* invest in the drug-smuggling operation described to her by Dressler and the special agent, despite their clear statements that the activity was illegal, and that she had the "opportunity *to* say yes or no". (audio tape transcript, 6/27/87). Brown produced $5,000 in cash, and told Dressler that the money was to be used to further the drug importation scheme. Dressler and the special agent knew the conversation was being recorded, but Brown did not.

On July 3, 1987, another recording was made of a meeting in Dressler's office attended by Dressler, two other confidential informants, plus Shirley Brown and Luis Gonzalez. Gonzalez thanked Brown for her investment in the drug conspiracy. Again the law enforcement officers were aware that the conversation was being recorded, but Brown and Gonzalez did not know that recordings were being made.

■ On the basis of the audio and video tapes made in Dressler's office, Brown was charged with two counts of criminal conspiracy along with the other four defendants. She filed a motion to suppress all of the recordings, arguing that the government had made the tapes without the necessary warrant or probable cause, thus violating her fourth amendment rights. Following a hearing on the suppression question, the district court denied Brown's motion to suppress the recordings. Brown then pled guilty to one count of conspiracy to import cocaine, reserving the right to appeal the denial of her suppression motion.

■ The proper disposition of Brown's motion must focus on her expectations of privacy in speaking with Dressler and the other government agents, and does not depend upon the location of the recorded conversation or the recording equipment. *United States v. Shields*, 675 F.2d 1152, 1158 (11th Cir.1982). We conclude that the district court properly denied Brown's motion to suppress the recordings. Under federal law, government agents may consent to recordings such as those at issue here.

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication[,] or one of the parties to the communication has given prior consent to such interception.

18 U.S.C. § 2511(2)(c).

■ This court held in *United States v. Yonn*, 702 F.2d 1341, 1347 (11th Cir.1983), that a defendant has no justifiable expectation of privacy when he speaks with some-

one acting as a government informant, and is unaware that a recording device is concealed in the room. As long as one of the parties to a conversation knows of and consents to the recording, the fourth amendment is not violated when the government records the exchange and uses the evidence so gathered in a subsequent criminal prosecution. *United States v. White*, 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971); *United States v. Byrom*, 910 F.2d 725, 734 n. 9 (11th Cir.1990); *United States v. Shields*, 675 F.2d 1152, 1158 (11th Cir.1982). No warrant is needed when a government informant consents to the recording of a conversation in which he participates. *United States v. Smith*, 918 F.2d 1551, 1558 (11th Cir.1990).

Here Rick Dressler, the confidential informant who participated in the conversations, knew they were being recorded and obviously consented to the recordings. Defendant Brown voluntarily participated in the conversations, and had no legally justifiable expectation that Dressler was not a government agent or would not reveal the contents of the conversations. *Yonn*, 702 F.2d at 1347.

Though *Yonn* did not address the question of video surveillances, other courts have applied the same expectation of privacy analysis to the video context. In *United States v. Hoye*, 671 F.Supp. 1098, 1102–03 (E.D.Va.1987), the court declined to suppress both audio and video recordings of the defendant's conversations with a confidential informant, since the defendant's statements were made to the informant or in his presence. The defendant had assumed the risk that the person to whom he spoke might disclose anything he had seen or heard. *Hoye*, 671 F.Supp. at 1103. *See also United States v. Myers*, 692 F.2d 823, 859 (2d Cir.1982) (audio and visual recordings of conversations between defendant and undercover agents were admissible evidence since the agents themselves could have testified to the contents of the recorded conversations).

■ We reject Brown's argument that a warrant or probable cause was needed be-fore the government could enter her office and rent desk space there. As the Supreme Court has recently stated, "police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions.... [T]his proposition is by no means novel; it has been endorsed by the Court any number of times." *Florida v. Bostick*, —— U.S. ——, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991) (upholding searches of bus passengers' luggage even absent probable cause as long as reasonable passengers would feel free to decline the officers' request or otherwise terminate the encounter). In our case, the government *did* have reasonable suspicion that Brown was engaging in illegal money laundering at the time a confidential informant first entered her office and at the time recording equipment was installed.

Brown did not have to agree to Rick Dressler's request to rent desk space in her office, but once she consented to the arrangement, she took the risk that he might see or hear things that would incriminate her. "The Fourth Amendment proscribes unreasonable searches and seizures; it does not proscribe voluntary cooperation." *Bostick*, 111 S.Ct. at 2389. The fourth amendment does not require law enforcement personnel to obtain a warrant or have probable cause before renting office space in a private office from a consenting landlord. Though Brown was unaware of agent Dressler's connection to the law enforcement field, she validly agreed to rent the office space, and she voluntarily engaged in conversations with Dressler and others. Earlier decisions of this court and the Supreme Court indicate that by doing so, Brown took the risk that the contents of the conversations would be revealed to the authorities and would incriminate her. *See White*, 401 U.S. at 752, 91 S.Ct. at 1126; *Hoffa v. United States*, 385 U.S. 293, 302, 87 S.Ct. 408, 413–14, 17 L.Ed.2d 374 (1966); *Yonn*, 702 F.2d at 1347.

While we recognize that some conversations might have occurred in the room to which reasonable expectations of privacy might have attached, no such conversations

were offered as evidence by the government. There is some evidence that Rick Dressler's rented office space was sometimes used by an employee of Shirley Brown's real estate agency. Any conversations recorded when Dressler was absent from the office, such as those between Brown and her employee, would not have been admissible evidence, since none of the parties would have been aware of the recording devices. Yet in *Yonn,* this court stated, "We see no reason to suppress the recording of a clearly unprotected conversation merely because the monitoring technique employed poses a hypothetical risk that protected conversations may be intercepted." 702 F.2d at 1347 n. 5. Both recorded conversations which the government introduced and Shirley Brown sought to suppress included Rick Dressler, who consented to the recording while acting in his capacity as a confidential informant for law enforcement agencies. No other protected conversations were presented to the district court, and the record does not even indicate that any other conversations were ever recorded. Shirley Brown's motion to suppress the recorded conversations was properly denied.

■ Shirley Brown also argues that she should have been granted release on bond pending disposition of her appeal. The district court issued an order denying her motion for such release, concluding that she had failed to satisfy the relevant legal requirements. In *United States v. Giancola,* 754 F.2d 898, 901 (11th Cir.1985), this court held that a defendant seeking release on bond pending appeal must establish four factors:

(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;

(2) that the appeal is not for purpose of delay;

(3) that the appeal raises a substantial question of law or fact; and

(4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all

counts on which imprisonment has been imposed.

This standard is derived from the Bail Reform Act spelled out in 18 U.S.C. § 3143. Here, the district judge concluded that Brown had failed to establish the third factor, since he found that her appeal did not raise substantial questions of law. We affirm the district court's conclusion. While the district court improperly believed Brown's conviction did not permit the possibility of parole, this error did not affect the length of her sentence or the validity of her guilty plea. Brown failed to raise substantial legal questions in her appeal, and the district court's denial of bond pending appeal was supported by the proceedings below and the relevant law.

The denial of Brown's motion to suppress is AFFIRMED, as is the denial of her motion for bond pending appeal. The case is REMANDED for resentencing in a manner not inconsistent with this opinion.

## LUIS GONZALEZ

■ Luis Gonzalez has not challenged the mandatory non-paroleability of his sentence under 18 U.S.C. § 4205 (1982). Nonetheless we conclude that he is entitled to resentencing for the same reasons as the other four defendants who have raised the issue. *See United States v. Delgado,* 903 F.2d 1495, 1504 (11th Cir.1990) (vacating and remanding plainly erroneous sentence which was not challenged by defendants on appeal). Gonzalez' counsel's failure to raise the argument has not prejudiced the government, which has fully briefed the question of paroleability for the other defendants. The district court's belief that Gonzalez' conviction required or allowed a non-paroleable sentence was a clear legal error, and the district court should be given an opportunity to correct the error for all five defendants on remand.

However on the question of a mandatory minimum sentence, a review of the record in this and the related cases indicates that at the time of Gonzalez' July 7, 1989 sentencing hearing, the district judge correctly understood that no mandatory minimum sentence applied to this conspiracy convic-

tion. No remand for resentencing on this issue is warranted for Luis Gonzalez.

 Gonzalez does argue that the government failed to fulfill its promises to him when he was sentenced. He contends that he pled guilty to the first count of the indictment with the understanding that by providing information about other drug transactions, he could secure a shorter sentence. The plea agreement states in relevant part:

(a). Defendant will enter a voluntary plea of guilty to Count One of the Superceding Indictment charging him with a violation of Title 21, United States Code, Sections 952(a) and 963;

(b). Defendant agrees to cooperate fully with the government and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any United States District Court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information including production of any and all books, papers, documents and other objects in his possession or control relating to relevant matters, and making himself available for interviews by law enforcement officers;

. . . . .

(d). At the time of sentencing, the government will make no specific recommendation to the Court as to what length of sentence should be imposed, but reserves the right to make all relevant facts known....

. . . . .

(f). At the time of sentencing, the government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation, and any other mitigating factors.

At Gonzalez' July 7, 1989 sentencing hearing, the Assistant U.S. Attorney indicated that the information provided by Gonzalez to law enforcement officers had been old and not helpful to other investigations, and that he did not deserve a lenient sentence. The prosecutor said: "As far as any cooperation that could be helpful to the government in an ongoing investigation or to even start an ongoing investigation, Mr. Gonzalez was not able to produce any information in that regard nor was he willing to do that."

 When a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). In determining whether the terms of a plea agreement have been violated, this court must determine whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the guilty plea. *United States v. Nelson*, 837 F.2d 1519, 1522 (11th Cir.1988). Where the terms are disputed, the court should apply an objective standard to determine their meaning. *In re Arnett*, 804 F.2d 1200, 1202 (11th Cir.1986).

The plea agreement at issue here did not promise that Gonzalez would receive a shorter sentence. It plainly says that the government would not make any specific recommendation to the court as to what length of sentence should be imposed, but would make known to the court the "nature and extent of defendant's cooperation, and any other mitigating circumstances." In return, the government moved to dismiss gun possession charges and one of the two conspiracy charges brought against Gonzalez.

The plain words of the plea agreement could not have led Gonzalez to a reasonable belief that he would automatically qualify for a reduced sentence or that the government would speak any more favorably on his behalf than it did. In accurately describing the extent of Gonzalez' cooperation and the limited utility of the information he provided, the government fulfilled its promises to him. Gonzalez' argument is without merit.

The validity of Luis Gonzalez' plea agreement is AFFIRMED. The case is RE-

MANDED for resentencing in a manner not inconsistent with this opinion.

## LUIS ROSALES–MARTINEZ

For the above-stated reasons, Luis Rosales–Martinez is entitled to resentencing on the question of paroleability. *See* 18 U.S.C. § 4205 (1982).

However, on the question of a mandatory minimum sentence, a review of the record from Rosales–Martinez' July 6, 1989 sentencing hearing, and the proceedings from the earlier sentencings of his co-conspirators, indicates that the district judge by then properly understood that no mandatory minimum sentence applied to his conspiracy conviction. No correction to Rosales–Martinez' sentence on this question is thus warranted.

■ Rosales–Martinez also argues that information from the trial of co-defendant Laetividal–Gonzalez was used by the district judge at Rosales–Martinez' sentencing, denying the latter of due process. The government argued that evidence from the co-defendant's trial had shown that Rosales–Martinez was one of the leaders of the conspiracy, but Rosales–Martinez disputed this characterization of his role.

This court held in *United States v. Castellanos*, 904 F.2d 1490, 1496 (11th Cir. 1990), that a sentencing court may not rely on evidence presented at a prior trial of another person in order to resolve factual disputes, *unless* the defendant has been given an opportunity to rebut or cast doubt on the reliability of the evidence.

A review of the record from the sentencing hearing indicates that Rosales–Martinez did object to the presentence investigation report which included information from Laetividal–Gonzalez' trial. At the hearing, Rosales–Martinez' counsel argued that there had been insufficient evidence presented by the government to support the information regarding his client's role in the conspiracy. Clearly, then Rosales–Martinez had the required opportunity to rebut or cast doubt on any evidence gathered from the trial of his co-defendants. That is all that *Castellanos* requires, and

beyond providing this opportunity, the court was free to "consider testimony from the trial of a third party". 904 F.2d at 1496.

In fact, there is no indication that Judge Castagna relied on any evidence from the earlier trial. Rosales–Martinez' argument before this court is based solely on the prosecutor's reference to the other trial, not to anything the judge did or said in sentencing Rosales–Martinez. We conclude that aside from the question of paroleability, Rosales–Martinez was properly sentenced.

The case is REMANDED for resentencing in a manner not inconsistent with this opinion.

## GONZALO OCAMPO

For the above-stated reasons, Gonzalo Ocampo is entitled to resentencing on the question of paroleability. *See* 18 U.S.C. § 4205 (1982).

Ocampo was sentenced on June 15, 1989, the same day as defendant Laetividal–Gonzalez. As discussed more fully above, we conclude that at that time, the district judge mistakenly believed that minimum mandatory sentences applied to the defendants' convictions. Under this court's opinions in *United States v. Giltner*, 889 F.2d 1004, 1009 (11th Cir.1989) and *United States v. Rush*, 874 F.2d 1513, 1514 (11th Cir.1989), this was error, since only substantive drug trafficking convictions, not the related conspiracy convictions, carried mandatory minimum sentences. Ocampo is entitled to resentencing on both the paroleability and mandatory minimum sentence questions.

In addition to his direct appeal, Ocampo has appealed the denial of his Motion to Vacate Sentence under 28 U.S.C. § 2255, which was based upon his claim of ineffective assistance of counsel at trial. Specifically in the section 2255 motion, Ocampo argued that his trial counsel was ineffective because he failed to investigate the possibility that Ocampo was coerced into participating in the conspiracy, and failed to prepare Ocampo for direct and cross-ex-

amination on this issue. This, alleged Ocampo, resulted in the district court's failure to instruct the jury on the defense of duress, thus prejudicing Ocampo's case.

■ Ocampo contends that he was improperly denied an evidentiary hearing on the section 2255 motion. That statute provides that in an action to vacate or correct a sentence, the court shall grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. As this court has indicated, the district court need not hold an evidentiary hearing every time a section 2255 claim of ineffective assistance is raised. "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." *Holmes v. United States,* 876 F.2d 1545, 1553 (11th Cir.1989) (quoting *United States v. Guerra,* 588 F.2d 519, 520–21 (5th Cir. 1979)).

The district court properly addressed Ocampo's section 2255 motion under the two-part analysis of *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on an ineffective assistance of counsel claim, Ocampo would have had to show that his trial attorney's performance fell below an objective standard of reasonableness and that these unprofessional errors prejudiced the defense. *Id.* To show prejudice, the section 2255 petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

We agree with the district court that no evidentiary hearing was needed to decide that any alleged ineffectiveness of counsel was not prejudicial to Ocampo. As the district court stated in its order, "Assuming that all of the evidence described by defendant was available to defendant's trial counsel and counsel failed to present

that evidence, the Court still would not have instructed the jury regarding a duress defense. Thus, defendant cannot demonstrate that he was prejudiced by trial counsel's performance."

In the section 2255 motion, Ocampo contends that his lawyer failed to pursue the defense of duress. Ocampo argues that Hernando Gomez, a Colombian drug supplier, stayed at Ocampo's house occasionally during the time when Ocampo was participating in the drug conspiracy, and that Gomez forced him to commit the illegal acts for which Ocampo was tried.

■ To show that he performed an illegal act under duress, a defendant must show that he acted under an immediate threat of death or serious bodily injury, that he had a well-grounded fear that the threat would be carried out, and that he had no reasonable opportunity to escape or inform the police. *United States v. Sixty Acres in Etowah County,* 930 F.2d 857, 860–61 (11th Cir.1991). Ocampo's duress defense was clearly wanting here, as Ocampo himself testified that he had opportunities to contact the police but did not do so. He also testified that no one ever threatened him with a gun. Therefore, the district court properly declined to instruct the jury on the defense of duress, and Ocampo's objections to his lawyer's failure to pursue the defense are without merit.

■ Ocampo also alleges that though multiple conspiracies existed here, the indictment and the jury instructions did not refer to multiple conspiracies. He did not request a multiple conspiracies instruction at trial. A multiple conspiracies instruction is generally required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment. *See Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

Though there were different cocaine suppliers for the drug importation scheme in

this case, Ocampo shared a common objective with the others, and the shift from one supplier to another did not represent a change in the essential nature or objectives of the single conspiracy. *See United States v. Khoury,* 901 F.2d 948, 956–57 (11th Cir.1990) (a single conspiracy existed despite change in drug importation plans since the nature of the scheme was unchanged and there was a common goal and an overlap of participants). Ocampo was not entitled to exclude evidence concerning the first supplier, nor to an instruction on multiple conspiracies.

 Finally Ocampo argues that the district court abused its discretion when Ocampo requested a continuance to retain new counsel on the day of trial, and the request was denied. Ocampo told the district court after the jury had been selected and sworn that he wanted a new lawyer because his trial counsel had not spent enough time with him preparing for trial and no longer believed in Ocampo's innocence. The lawyer had advised Ocampo to plead guilty as some of the other defendants had done.

The standard of review is abuse of discretion. *United States v. Garmany,* 762 F.2d 929, 935–37 (11th Cir.1985). Actual prejudice must have resulted from the denial of Ocampo's request before he would be entitled to a new trial. *United States v. Hamm,* 786 F.2d 804, 806 (7th Cir.1986). A trial court has broad discretion in deciding whether to grant or deny a motion for a continuance. *Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983).

Where an accused voices objections to appointed counsel, the trial court should inquire into the reasons for the dissatisfaction. *Thomas v. Wainwright,* 767 F.2d 738, 741 (11th Cir.1985). Here Judge Castagna inquired about Ocampo's concerns with his lawyer, and determined that a new lawyer was not needed. The judge told Ocampo that the lawyer need not believe in his innocence in order to provide a good defense, and Ocampo was free to ignore the lawyer's advice regarding accepting a plea agreement. A review of the lengthy discussion between the district judge and Ocampo indicates that the judge dealt with Ocampo's concerns with respect and sensitivity even as he determined that Ocampo's lawyer was competent and need not be replaced. We find no abuse of the district court's discretion in the denial of Ocampo's motion for a continuance.

The denial of Ocampo's Motion to Vacate Sentence under 28 U.S.C. § 2255 is AFFIRMED, as is his conviction. The case is REMANDED for resentencing in a manner not inconsistent with this opinion.

Accordingly, all five cases are REMANDED for resentencing in a manner not inconsistent with this opinion. In all other respects, the convictions and sentences are AFFIRMED.