59 F.3d 179
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jaime Javier MATA, Defendant-Appellant.
 No. 94-5104.
 United States Court of Appeals, Tenth Circuit.
 June 30, 1995.
 
 ORDER AND JUDGMENT[1]
 Before ANDERSON, and BALDOCK, Circuit Judges, and BROWN,[2] District Judges.
 ANDERSON, Circuit Judge.
 
 
 1
 Defendant Jaime Mata was convicted of conspiring to distribute marijuana in violation of 21 U.S.C. 846. He appeals the trial court's denial of his motion for judgment of acquittal, contending there was a fatal variance between the indictment, which charged a single conspiracy, and the government's proof at trial, which allegedly showed two separate conspiracies. We affirm.
 
 BACKGROUND
 
 2
 On November 3, 1991, David McDermott was charged in Count One of an indictment with operating a Continuing Criminal Enterprise. The appellant, Jaime Mata, was charged in Count Two of the same indictment with conspiring with David McDermott, Juan Mata, Lewis Lacy "and others" to distribute marijuana. R. Vol. I, doc. 1 at 4. Specifically, Count Two, subsection B, paragraph (2) provided that "McDermott would and did receive large amounts of said marijuana in the Northern District of Oklahoma, and elsewhere, distributed from Juan Antonia Mata and Jaime Javier Mata and others both known and unknown to the grand jury." Id. (emphasis added).
 
 
 3
 Jaime Mata, David McDermott, and Juan Mata were then tried together. The evidence revealed that David McDermott ran a marijuana distribution operation in Tulsa, Oklahoma, where he had numerous distributors. With regard to McDermott's suppliers, the prosecution presented evidence that McDermott received marijuana from a supplier called "Roy" in Dallas, Texas, as well as from Jaime Mata in Donna, Texas. It was the government's theory that each of the defendants conspired in one large scheme to distribute and possess with the intent to distribute marijuana.
 
 
 4
 Mata contends, however, that the prosecution's evidence at trial showed that Mata and the Dallas supplier were not connected, but were independent suppliers of marijuana to McDermott, resulting in two separate conspiracies rather than the one conspiracy charged.[3] Mata argues that he was substantially prejudiced by testimony at trial that recounted a conspiracy in which he was not a member because of a likelihood that the jury attributed that evidence to him in its deliberations. On this basis he contends his conviction should be reversed under Kotteakos v. United States, 328 U.S. 750 (1946).
 
 DISCUSSION
 
 5
 A variance arises when the evidence adduced at trial establishes facts different from those alleged in the indictment. Dunn v. United States, 442 U.S. 100, 105 (1979); United States v. Powell, 982 F.2d 1422, 1431 (10th Cir.1992), cert. denied, 113 S.Ct. 2361 (1993); United States v. Dickey, 736 F.2d 571, 581 (10th Cir.1984), cert. denied, 469 U.S. 1188 (1985). Such a variance, however, is not fatal to the government's case unless it affects "the substantial rights of the accused." Berger v. United States, 295 U.S. 78, 82 (1935). Accordingly, where a single conspiracy is charged, and the government proves only multiple conspiracies, a defendant who suffers substantial prejudice thereby must have his conviction reversed. Kotteakos v. United States, 328 U.S. 750, 773-74 (1946).
 
 1. Variance
 
 6
 A variance claim in a conspiracy case amounts to a challenge to the sufficiency of the evidence supporting the jury's finding that the defendant was part of the conspiracy charged in the indictment. We must determine, therefore, whether viewed in the light most favorable to the government, there was sufficient evidence upon which a reasonable jury could find that Mata participated in the single conspiracy charged in the indictment beyond a reasonable doubt. Daily, 921 F.2d at 1007; Dickey, 736 F.2d at 581-82; United States v. Behrens, 689 F.2d 154, 160 (10th Cir.), cert. denied, 459 U.S. 1088 (1982). "That the record reveals some scintilla of evidence of a variance (that is, evidence of multiple conspiracies) is immaterial." Daily, 921 F.2d at 1007.
 
 
 7
 In order to prove Mata was guilty of conspiracy, the government must prove that he conspired with at least one other person to violate the law, that he knew the purpose of the conspiracy, and that he knowingly and voluntarily became a participant in it. United States v. Williams, 923 F.2d 1397, 1402 (10th Cir.1990), cert. denied, 500 U.S. 925 (1991). When the question is not whether the defendant was guilty of a conspiracy, but rather whether he was a member of the single, broad conspiracy alleged in the indictment, "the focal point of the analysis is whether the alleged co-conspirators were united in a common unlawful goal or purpose." Daily, 921 F.2d at 1007. The essential element of this "common objective" test is interdependence. The conduct of alleged coconspirators may be diverse and far ranging; however, to find a single conspiracy, their conduct must exhibit interdependence. Powell, 982 F.2d at 1429; United States v. Horn, 946 F.2d 738, 740-41 (10th Cir.1991); Daily, 921 F.2d at 1007.
 
 
 8
 In the instant case the common goal is readily apparent. McDermott, his suppliers, and his distributors, all sought to profit from the illicit distribution of marijuana. Mata claims, however, that because McDermott had two different suppliers--the Dallas supplier and Mata--the suppliers were necessarily competitors and could not, therefore, be part of a single conspiracy. Essentially, Mata argues that the requisite interdependence was lacking. We are not persuaded.
 
 
 9
 First, "[s]eparate transactions are not separate conspiracies, as long as the activities were aimed at a common illicit goal.' " Powell, 982 F.2d at 1431 (quoting Dickey, 736 F.2d at 582); see Brewer, 630 F.2d at 799; United States v. Parnell, 581 F.2d 1374, 1382 (10th Cir.1978), cert. denied, 439 U.S. 1076 (1979). Moreover, the existence of multiple suppliers or distributors does not necessarily lead to the existence of multiple conspiracies. See, e.g., Johnson, 1995 WL 250716, at * 3 ("[T]he fact that drug dealers may sometimes, or even always, compete for supplies or customers in serving a market does not on that account alone disprove ... the existence of a single conspiracy to achieve the overall results of their several efforts" (quoting Banks, 10 F.3d at 1054)); Morris, 46 F.3d at 416 ("We keep in mind that the larger, common plan was the purchase and sale of drugs through Costa for profit. [Defendant] is no less a part of this larger, common plan because Costa also purchased from others."); Quintero, 38 F.3d at 1337 (providing that a single drug conspiracy may involve numerous suppliers and distributors); Pou, 953 F.2d at 369-70 (that defendant was one of several suppliers during the life of the conspiracy, and that various suppliers were not necessarily known to the others, "does not lead to the conclusion that, each time a new source for cocaine joined the conspiracy, a new conspiracy was born"); United States v. Edwards, 945 F.2d 1387, 1393 (7th Cir.1991) ("Where competing suppliers maintain a long-standing business relationship with the network, it makes no sense to exclude them from the web of expanded drug liability.... The more important consideration is not whether a particular defendant can be labeled a competitor of other defendants, but instead whether the defendant demonstrated a substantial level of commitment to the conspiracy."); United States v. Laetividal-Gonzalez, 939 F.2d 1455, 1466 (11th Cir.1991) (concluding that although drug scheme maintained various suppliers, the shift from one supplier to another did not change the essential nature and objectives of the single conspiracy), cert. denied, 503 U.S. 912 (1992).
 
 
 10
 Although in United States v. Harrison, 942 F.2d 751 (10th Cir.1991), we concluded that three separate conspiracies existed where there were various suppliers, we do not read Harrison as standing for the proposition that under all circumstances the use of multiple suppliers necessitates finding separate conspiracies. Our decision in Harrison was dependent upon the facts of that particular case in which each succeeding source acted to the complete exclusion of the preceding one by convincing the purchaser to terminate his agreement to buy from that prior source. Id. at 757. Thus, the court concluded that each new source rendered the prior source "unable to continue his conspiracy with [the purchaser]." Id. In this way, the situation in Harrison is diametrically opposed to the circumstances in the present case where trial testimony clearly indicated that McDermott continued to purchase from his various sources simultaneously. See, e.g., R. Vol. XII at 371.
 
 
 11
 Moreover, the law of this circuit has consistently been, both prior and subsequent to our decision in Harrison, that the essential element of "[i]nterdependence may be found if a defendant's actions facilitated the endeavors of other coconspirators or facilitated the venture as a whole." Powell, 982 F.2d at 1429 (emphasis added); see United States v. Rangel-Arreola, 991 F.2d 1519, 1523 (10th Cir.1993); United States v. Morehead, 959 F.2d 1489, 1500 (10th Cir.1992); Horn, 946 F.2d at 740-41; Daily, 921 F.2d at 1007. In this case, the evidence clearly established that Mata's activities contributed significantly to the success of the overall conspiracy; that Mata was engaged in and knew he was part of a larger enterprise that was selling and distributing marijuana for profit; and that Mata supplied McDermott with marijuana on a regular basis, and over a substantial period of time. Accordingly, we find the evidence sufficient to sustain a jury finding that Mata was involved in the conspiracy charged in Count Two of the indictment.
 
 2. Prejudice to Substantial Rights
 
 12
 Even assuming a variance between the indictment and the proof at trial, Mata is not entitled to relief unless the variance affected his substantial rights. Berger, 295 U.S. at 82. Mata asserts that the alleged variance "affected his substantial rights" by creating a spillover effect, or a likelihood of transference of guilt to him from evidence relating to the Dallas supplier.
 
 
 13
 In assessing whether a potential prejudicial spillover impermissibly affected the fairness of a trial in which a variance occurred, we have considered the following relevant factors: whether the proliferation of separate conspiracies in the case affected the jury's ability to segregate each defendant's individual actions and participation; whether the variance caused confusion among the jurors as to the limited use of certain evidence; and the strength of the evidence underlying the conviction. Powell, 982 F.2d at 1432; United States v. Wright, 932 F.2d 868, 875-76 (10th Cir.), cert. denied, 502 U.S. 962 (1991).
 
 
 14
 First, we find that the facts of this case were not so intricate as to render the jury unable to segregate the evidence associated with each defendant's individual actions where there were only three defendants and alleged proof of two conspiracies. In Kotteakos v. United States, 328 U.S. 750 (1964), the Supreme Court reversed a conspiracy conviction where, although the indictment charged one conspiracy, the evidence, which was directed at thirty-two defendants, showed at least eight separate conspiracies. The Court, however, carefully distinguished that situation from the one it previously addressed in Berger v. United States, 295 U.S. 78 (1935), in which the Court upheld a conviction for participation in a single conspiracy where there were only five defendants and two conspiracies proven at trial. The Court in Kotteakos stated:
 
 
 15
 [I]t is one thing to hold harmless the admission of evidence which took place in the Berger case, where only two conspiracies involving four persons all told were proved, and an entirely different thing to apply the same rule where, as here, only one conspiracy was charged, but eight separate ones were proved, involving at the outset thirty-two defendants.
 
 
 16
 Kotteakos, 328 U.S. at 766.
 
 
 17
 Moreover, the trial court's instructions to the jury in this case minimized any possible prejudice. During the course of trial, after some of the witnesses testified regarding both Mata's role as well as the Dallas supplier's role in the drug operation, the judge provided the following limiting instruction: "[T]here has been testimony during the trial in regard to the trips to Dallas where marijuana was obtained from someone named Roy. It does not involve the Matas and the evidence will not be admissible against the Matas but only as against the defendant, McDermott, anything dealing with the Dallas trips." R. Vol. XI at 229. In addition, the jury instructions advised that "[i]n certain instances evidence may be admitted only concerning a particular party ... and not against all parties for all purposes," R. Vol. I, Doc. 68 at 17, and admonished the jury to "analyze what the evidence in the case shows with respect to that individual defendant leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants," id. at 15.
 
 
 18
 Finally, as indicated earlier, there was more than sufficient evidence regarding Mata's involvement in the conspiracy. We therefore conclude that even assuming a variance existed, Mata's substantial rights were not affected.
 
 
 19
 The district court's decision is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [3]
 Mata's claim that there were "multiple conspiracies" is an argument which is frequently advanced but seldom successful. See, e.g., United States v. Williamson, Nos. 93-3389, 93-3399, 94-3026, 94-3053, 1995 WL 225507, * 7-* 8 (10th Cir. Apr. 14, 1995); United States v. Roberts, 14 F.3d 502, 511 (10th Cir.1993) (drug conspiracy); United States v. Powell, 982 F.2d 1422, 1431 (10th Cir.1992) (drug conspiracy), cert. denied, 113 S.Ct. 2361 (1993); United States v. Daily, 921 F.2d 994, 1008 (10th Cir.1990), cert. denied, 502 U.S. 952 (1991); United States v. Mobile Materials, Inc., 881 F.2d 866 (10th Cir.1989), cert. denied, 493 U.S. 1043 (1990); United States v. Nunez, 877 F.2d 1470, 1474 (10th Cir.) (drug conspiracy), cert. denied, 493 U.S. 981 (1989); United States v. Pilling, 721 F.2d 286, 296 (10th Cir.1983) (drug conspiracy); see also United States v. Johnson, Nos. 92-5672, 92-5673, 1995 WL 250716, at * 3 (4th Cir. Apr. 27, 1995) (drug conspiracy); United States v. Morris, 46 F.3d 410, 417 (5th Cir.) (drug conspiracy), cert. denied, No. 94-9280, 1995 WL 315514 (June 19, 1995); United States v. Quintero, 38 F.3d 1317, 1337 (3d Cir.1994) (drug conspiracy), cert. denied, 115 S.Ct. 1263 (1995); United States v. Curtis, 37 F.3d 301, 305 (7th Cir.1994) (drug conspiracy), cert. denied, 115 S.Ct. 1110 (1995); United States v. Thomas, 12 F.3d 1350, 1358 (5th Cir.) (drug conspiracy), cert. denied, 114 S.Ct. 1861 (1994); United States v. Soto-Rodriguez, 7 F.3d 96, 100 (7th Cir.1993) (drug conspiracy); United States v. Pou, 953 F.2d 363, 369 (8th Cir.) (drug conspiracy), cert. denied, 504 U.S. 926 (1992). The unsuccessfulness of this argument is due in part to the principles of conspiracy law. It is elementary that a person may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities or over the whole period of its existence. The "multiple conspiracies" argument fares even worse in the drug conspiracies context because narcotics trafficking in quantities larger than that ordinarily purchased by the end-user necessarily involves knowledge of participation in a greater scheme. And court's have increasingly acknowledged the "elastic and sprawling" nature of drug conspiracies. See Krulewitch v. United States, 336 U.S. 440, 445 (1949) (Jackson, J., concurring); United States v. Dickey, 736 F.2d 571, 582 (10th Cir.1984), cert. denied, 469 U.S. 1188 (1985); United States v. Brewer, 630 F.2d 795, 799 (10th Cir.1980); see also United States v. Banks, 10 F.3d 1044, 1054 (4th Cir.1993) (stating that contemporary drug conspiracies consist of a "loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market")